Colón Birriel, Juez Ponente
*688 TEXTO COMPLETO DE LA SENTENCIA
I
Los demandantes, ahora apelantes, Roque Díaz Morales y su esposa Norma Luz Martínez Martínez ("los apelantes") nos solicitan la revisión de una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, el 8 de noviembre de 1995, declarando "No Ha Lugar" la demanda que sobre "Daños y Perjuicios, Injunction Posesorio, Daños a la Propiedad, Deslinde, Usucapión, Acción Civil" presentaran contra los demandados ahora apelados Pablo Salas Mangual, Blanca Victoria Bosques y la Sociedad Legal de Gananciales compuesta por ambos; Víctor Soto Méndez, María Elena Hernández y la Sociedad Legal de Gananciales compuesta por ambos ("los apelados") y "Con Lugar" su reconvención. El foro de instancia resolvió que el predio de terreno que reclamaban los apelantes era propiedad de los apelados y no proveyó compensación alguna por daños reclamados en la reconvención, habida cuenta de la falta de prueba real y convincente para establecerlos. Además, le impuso a los apelantes el pago de las costas del pleito.
Examinados los autos originales y los escritos ante nuestra consideración resolvemos. Veamos.
II
Surge de los autos originales y de los escritos, que el 10 de agosto de 1993, los apelantes presentaron una demanda en el antiguo Tribunal Superior, Sala de Aguadilla en la que alegaron, en síntesis: 1) ser dueños de un inmueble de 0.98 cuerdas, radicado en el Barrio Río Grande del Municipio de Aguada; 2) haber sido perturbados en la posesión de su propiedad por los apelados, quienes, sin su autorización, procedieron a derribar la verja o cerca, tumbar árboles y depositar la basura" en el inmueble antes mencionado; y, 3) estar en posesión de éste por más de treinta (30) años, sin ser perturbados en dicha posesión, por lo que solicitaron, a la falta de reconocimiento sobre justo título, se le acreditara como titulares por prescripción extraordinaria del inmueble, o bien, se les restituyera conforme a la acción de deslinde. Requirieron, además, se procediese a ordenar la corrección de los Libros del Registro de la Propiedad en la finca número 4,375 para ajustarla a la realidad extra registral y aclarar la situación de los colindantes. A tales fines, solicitaron se le ordenara a los apelados corregir la colindancia NORTE y OESTE, para incluirlos en dichas colindancias, conforme a la realidad extra registral.
Por su parte, el 30 de noviembre de 1993, los apelados presentaron su "Contestación a Demanda y Reconvención" mediante la cual aceptaron algunas de las alegaciones de la demanda y negaron otras.
En síntesis, alegaron como defensas especiales: 1) que la demanda contenía una indebida acumulación de acciones ordinarias y extraordinarias, contrario a nuestro ordenamiento jurídico; 2) ser terceros regístrales de buena fe; 3) haber adquirido, mediante compraventa del 4 de marzo de *689 1993, el predio descrito en la alegación número tres (3) de la demanda, predio que consta debidamente inscrito en el Registro de la Propiedad; 4) el desconocimiento de cualquier usucapiente ordinario o extraordinario a favor de persona distinta al del transmitente, por lo que negaron los efectos de la usucapión consumada o en vías de consumarse y, 5) haber hecho actos de dominio, única y exclusivamente, dentro de los límites de su propiedad, según surgía de la descripción legal del título de su propiedad, de la descripción registral de la finca, del plano de mensura y según lo mostrado por los vendedores de la propiedad.
Por vía de "Reconvención", los apelados: 1) incorporaron la alegación número tres (3) de la demanda; 2) alegaron haber sido perturbados y menoscabados en el libre uso y disfrute de su propiedad y, 3) haber sufrido retraso en los planes de desarrollo de su propiedad, todo ello por las actuaciones de los apelantes. Solicitaron resarcimientos.
El 2 de febrero de 1994, la controversia se convirtió en una ordinaria, concediéndose término a las partes para el descubrimiento de prueba. El 4 de febrero de 1994, los apelantes presentaron en el Tribunal de Primera Instancia la correspondiente "Contestación a Reconvención". El 23 de febrero de 1994 se enmendó la demanda a los efectos de incluir como demandantes a Melanio Muñiz Muñiz y su esposa Carmen L. Sánchez. 
Tras otros varios incidentes, el 9 de mayo de 1994 se celebró la Conferencia con Antelación al Juicio, donde las partes hicieron un intento por resumir las controversias en el litigio. En cuanto a los apelantes, la controversia se circunscribió a determinar: 1) si el predio de terreno reclamado estaba dentro de la propiedad de los apelados y 2) si éstos le causaron daños a los apelantes y a su propiedad, y, de ser así, a cuánto ascendían.
Por otro lado, en cuanto a los apelados, la controversia giraba en determinar: 1) si éstos eran terceros regístrales; 2) si el predio de terreno reclamado por los apelantes estaba comprendido dentro de su propiedad, y 3) si éstos le habían causado daños y a cuanto ascendían.
Así las cosas, el juicio comenzó el 19 de diciembre de 1994, continuándose el 21 de diciembre de ese año. Se admitió cierta prueba documental y otra ofrecida por los apelantes no fue admitida. Como prueba testifical por los apelantes declararon Jorge Tirado Velázquez, Virgilio Arroyo Crespo, César A. Santoni Correa, Luis Felipe Díaz Morales, Manuel De Jesús Ruiz Valentín, Ramón Mejías Muñoz, Roque Díaz Morales y el ingeniero Humberto Rivera Ayala. Por parte de los apelados testificaron Víctor Soto Méndez y el ingeniero Roberto García Vázquez.
Concluido el proceso, las partes sometieron sus respectivos memoriales. Posteriormente, el 8 de noviembre de 1995, el foro de instancia emitió su sentencia, de la que recurren los apelantes, imputándole a dicho foro los siguientes errores:

“1- Erró el Honorable Tribunal de Primera Instancia al no reconocer que la propiedad de los demandantes y la de los demandados se segregaban de distintas fincas y por ende son fincas independientes.

2-Erró el Honorable Tribunal de Primera Instancia al determinar que la propiedad objeto de este pleito está sujeto a lo dispuesto por la Junta de Planificación o Administración de Reglamentos y Permisos respecto a requisitos para la segregación.

3- Erró el Honorable Tribunal de Primera Instancia al no admitir en evidencia escrituras que acreditaban el tracto de la propiedad desde el 1915 hasta 1992. .

4- Erró el Honorable Tribunal de Primera Instancia al utilizar parcialmente la Certificación Registral de la finca de los demandados.

5- Erró el Honorable Tribunal de Primera Instancia al no acreditar la posesión de los anteriores dueños a la de los demandantes.

6- Erró el Honorable Tribunal de Primera Instancia al determinar que la posesión se interrumpió 
*690
naturalmente al cesar por más de un año.

7- Erró el Honorable Tribunal de Primera Instancia al determinar que los demandados son terceros regístrales.

8- Erró el Honorable Tribunal de Primera Instancia al determinar que la buena fe del tercero registral se probó.

9- Erró el Honorable Tribunal de Primera Instancia al no determinar que el Registro no garantiza cabida y al no determinar el efecto de la compra por precio alzado.

10- Erró el Honorable Tribunal de Primera Instancia al determinar que los demandantes habían solicitado una Acción Reivindicatoría.

11- Erró el Honorable Tribunal de Primera Instancia al determinar que la prueba testifical y documental no se ajustaba a lo solicitado en la demanda, respecto a la propiedad en controversia.

12-Erró el Honorable Tribunal de Primera Instancia al determinar que los demandados ofrecieron abundante prueba documental y testifical fehaciente, precisa y congruente respecto a su propiedad.

13-Erró el Honorable Tribunal al ignorar la Doctrina de Enriquecimiento Injusto.

14-Erró el Honorable Tribunal al copiar literalmente el Memorando de Derecho de la parte demandada en su sentencia."

ni
Un estudio exhaustivo y profundo de los documentos presentados por las partes, ante este foro, resultó ser insuficiente para lograr una visión clara y completa sobre las alegaciones tanto de los apelantes como de los apelados. En vista de ello, procedimos a solicitar los autos originales obrantes en el foro de instancia, a los fines de estudiarlos y así situamos en mejor posición de resolver las controversias presentadas. Examinemos, pues, los errores.
Los señalamientos de error 1, 4 y 9 los discutiremos simultáneamente por estar estrechamente relacionados entre sí. Se circunscriben a que el foro de instancia erró al no reconocer que la propiedad de los apelantes y la de los apelados fueron segregadas de distintas fincas y, por ende, constituían fincas independientes y separables. Los apelantes sostienen que el error fue motivado al no tomarse en consideración la Certificación Registral de la finca matriz de la cual fue segregada la finca de los apelantes. 
De ahí que la controversia precise de la identificación y particularización de la porción de terreno que apelantes y apelados alegan les corresponde por derechos adquiridos, bien sea (a) mediante negocio jurídico válido, infra, (b) por disposición de leyes especiales, discusión de los errores 2, 7, y 8, ó (c) debido a la posesión ininterrumpida de la propiedad, mediante prescripción extraordinaria, acumulada por ellos y sus antecesores, de quienes obtuvieron sus respectivos títulos de propiedad, discusión de los errores 5 y 6. Por lo que resulta necesario considerar si la porción de terreno objeto del litigio es uno, del todo inseparable de una misma finca, o bien, si constituye un problema de colindancias, o de otra naturaleza, entre fincas independientes.
De un análisis profundo y exhaustivo de los escritos ante nuestra consideración y la correspondiente prueba documental y pericial ofrecida en el foro de instancia, hemos concluido que nos encontramos ante la presencia de un caso con circunstancias de naturaleza muy particular. Ni de las alegaciones o defensas de los apelantes o apelados surge el remedio judicial que en ley corresponde conceder.
De un lado, los apelantes invocaron ante el foro de instancia distintas acciones legales, entre las cuales, se encuentran el Interdicto Posesorio, la Acción de Deslinde y Usucapión, con la correspondiente reclamación de daños a la propiedad, sufrimientos y angustias mentales. De los autos *691 no surge o se desprende, que en la etapa preliminar al juicio o en el juicio en su fondo, el foro de instancia atendiera lo pertinente a la indebida acumulación de acciones ordinarias y extraordinarias que formularon los apelados. De la prueba, tampoco surge que, en el juicio o en procedimiento posterior al juicio, éstos hicieran contención alguna para sostener dicho planteamiento, más allá de lo alegado en su "Contestación a Demanda y Reconvención". De aquí que no haremos ningún pronunciamiento respecto a este asunto.
Por otro lado, tanto los apelantes como los apelados concuerdan desde el inicio del pleito sobre la existencia de dos propiedades debidamente inscritas en el Registro de la Propiedad. Ello fue demostrado documental y evidenciariamente, de donde surgen claramente las siguientes descripciones:

“(A) La finca Núm. 527, de donde "se segregó" la propiedad actual de los apelantes, inscrita al folio 164, Tomo 11 de Aguada:

" — RUSTICA: Predio de terreno situado en el Barrio Río Grande del término municipal de . Aguada, compuesto de DOS CUERDAS SETENTA Y CINCO CENTIMOS DE OTRA, conteniendo ciento treinta y cinco palmas, colindando por el Norte, la zona marítima; al Este, don Donato Jiménez; al Sur, don Bautista González y Julio Cardona y al Oeste, Regalado González.-Que dicha finca según la inscripción primera antes mencionada consta inscrita en favor de doña Bernardina, don Julio y doña Eloísa de apellidos Cardona Marrero, quienes la adquieren por adjudicación en común pro indiviso en la proporción de una tercera parte para cada uno, según consta en la escritura número doscientos veintitrés (223), otorgada en Aguada el veinticuatro (24) de agosto de 1905 ante el Notario Juan Mercader Rodríguez, la que motivó la inscripción primera antes relacionada ". 
Surge, además, que la tercera y última inscripción registral de la finca Núm. 527, supra, data del 15 de mayo de 1923, según Certificación Registral emitida por el foro de instancia el 9 de diciembre de 1992.

“(B) La finca Núm. 706, finca de la cual procede la propiedad de los apelados, inscrita alfolio 70 del tomo 19 de Aguada, en su inscripción octava, la que se describe de la siguiente manera:

“ — Rústica, libre de cargas, descrita conforme la que ha virtud de la segregación de que ha sido objeto y que consta al margen de la anterior inscripción ha quedado reducida la cabida y descripción siguiente: "Rústica: radicada en los barrios Guaynabo y Río Grande del término municipal de Aguada; compuesta de veinte cuerdas y cuarenta y siete mil novecientas cuarenta y dos cien milésimas de otra, equivalente a ocho hectáreas, cuatro áreas y noventa y dos centiáreas, en lindes al NORTE, la zona marítima; Aristides Arroyo antes, hoy Correa and Tirado; al SUR, con la carretera de Aguada a Rincón, la vía férrea; la Sucesión de José Ramírez antes hoy varios vecinos; y la parcela de quinientos setenta y dos metros cuadrados y veintidós centímetros o sea catorce mil quinientos cincuenta y ocho cien milésimas de cuerda segregada y vendida a la compañía de los Ferrocarriles; al ESTE, con Francisco Moret; y al OESTE, con terrenos de Regalado González antes, hoy de su sucesión y los Correa and Tirado. Esta atravesada de Sur a Norte por el caño Santiponce". 
Los apelantes tenían que demostrar de dónde surgía el derecho reclamado sobre la porción de terreno de que alegaban ser dueños, independientemente a que fuera por medios extra-registrales; así lo hicieron, discusión de los errores 3,11 y 12.
En primer lugar, utilizando las descripciones regístrales existentes, procedimos a examinar la identidad aparente entre los lindes de la finca Núm. 706 y aquellos de la finca Núm. 527. Ambas fincas estuvieron afectadas en algún momento, en lindes al Norte, con la Zona Marítima, y al Oeste, con terrenos de Regalado González. Ello nos llevó a considerar la posibilidad de que, efectivamente, tratamos con un supuesto de fincas superpuestas o colindantes entre sí.
Del ofrecimiento de prueba de los apelantes, (evidencia ofrecida y no admitida) encontramos la Escritura Núm. 84, sobre Compraventa, discusión de los errores 3,11 y 12, otorgada el 12 de junio de 1928, en Aguadilla, Puerto Rico, por Don Sandalio Rodríguez Vargas a favor de Don Manuel Jiménez *692 López, ante el Notario Público Manuel García Méndez, de donde se desprende una nueva descripción de la finca Núm. 527: 

"RUSTICA: Sita en el Barrio Río Grande de Aguada, Puerto Rico, compuesta de noventa y ocho céntimos de una cuerda, igual a treinta y ocho áreas, cincuenta y una centiáreas y setenta y nueve miliáreas, conteniendo treinta y dos palmas de coco productivas y varias nuevas con las siguientes colindancias: Al NORTE, la zona marítima; al SUR, Manuel Jiménez; al Saliente, el Propio Manuel Jiménez; y al OESTE, Regalado González".

Aquí, observamos un cambio en la descripción de la finca Núm. 527, inscrita en el Registro de la Propiedad y que ahora se ve reducida su cabida en dos terceras partes de la finca matriz, a virtud de la Escritura Núm. 84 antes señalada la que nunca fue objeto de inscripción. De la prueba, inferimos un tracto adecuado para concatenar el hecho de que se trata de la misma propiedad, utilizando para ello los siguientes datos de referencia:

“1- Identidad entre el titular registral y el comprador mediante escritura pública no inscrita;

2- Identidad en la porción de terreno representativo de una tercera parte de la propiedad matriz, y la correspondiente porción de palmas de coco que en alguna medida fueron incluidas dentro de esa porción específica del terreno; y,

3- Identidad en cuanto al término municipal en el que está sita la finca objeto del recurso."

De aquí surge la alegación de los apelantes respecto a que, sobre tal finca, existió una segregación que debía reconocérseles, discusión del error número 2. Subsiguientemente, para verificar el estado actual y extra-registral de la propiedad en controversia, procedimos a trazar el rastro o tracto extra-registral de la finca Núm. 527, según analizado en los errores 3,11 y 12.
Para examinar la validez del negocio jurídico mediante el cual los apelantes alegan poseer la titularidad sobre el predio de terreno objeto de controversia necesariamente tenemos que acudir a una de las características o principios básicos del Derecho Registral; su naturaleza rogada. Todo procedimiento de inscripción constituye una acción dispositiva que se inicia a instancia de parte, excepto cuando el legislador así lo dispuso por mandato expreso. H.F. Inc. v. Registrador, 116 D.P.R. 433, 437 (1985). En aquellos casos, como el de autos, donde la inscripción es de naturaleza voluntaria sólo se publica la existencia del dominio y demás derechos reales, pero no es presupuesto para su constitución, pues el registro ni da ni quita derechos. Vimos en U.S.I. Properties v. Registrador, 124 D.P.R. 448, 467 (1989), cuando el Tribunal Supremo señaló:

“...el Registrador recurrido actuó como juez y obvió la máxima de que el Registro no da ni quita derechos, y que su función no tiene por objeto declarar la existencia o inexistencia de un derecho dudoso".

Por ende, resulta necesario recordar que el derecho positivo vigente sólo establece el carácter opcional y potestativo de cualquier persona con interés en asegurar un derecho inscribible. Pino Development v. Registrador de la Propiedad, _ D.P.R. _ (1993), 93 J.T.S. 73. Evidentemente los apelantes, al igual que los anteriores titulares de la finca Núm. 527, o porción de ella, con posterioridad al 1923, ejercieron libremente su derecho a no llevar al Registro de la Propiedad la cadena de sucesos que dieron lugar a su adquisición; nunca estuvieron obligados por éstos a inscribir. Más no por ello queda invalidado el título adquirido mediante escritura pública válida.
Luego, procedimos a hacer lo propio con la actual propiedad de los apelados. En su escrito titulado "Contestación a Demanda y Reconvención" los apelados aceptan que la inscripción octava de la finca Núm. 706, supra, correspondía a la finca matriz de la que procedía la segregación del predio sobre el cual pretenden, en la actualidad, ejercer sus derechos:

"...se acepta que los datos de inscripción pertenecen a la finca de la cual procede la finca de los demandados".

*693 Adecuadamente establecida la identidad y procedencia de la finca Núm. 4,735 (propiedad de los apelados), correspondía examinar la descripción actual de ésta. Dicha finca se encuentra inscrita al folio 1 del tomo 95 de Aguada, y se describe de la siguiente manera:
" — RUSTICA: Parcela de terreno con una cabida de 14.285 cuerdas, equivalentes a 56,145.621 metros cuadrados. Situada en los barrios Guaynabo y Río Grande del término municipal de Aguada, P.R. Colinda por el NORTE, con la Zona Marítima del Estado Libre Asociado de Puerto Rico; por el SUR, con la carretera estatal número 115 y un camino de acceso a las parcelas Nieves; por el ESTE, con el caño Santiponce del Estado Libre Asociado de P.R.; y por el OESTE, con Ray Shackt".
De los documentos en autos surge que una porción correspondiente a 98 céntimos de cuerda de la finca Núm. 4,735, tiene lindes al Norte y al Oeste totalmente confundibles en la actualidad, con iguales lindes de la porción de 98 céntimos de cuerda de la finca Núm. 527 que reclaman los apelantes; por el Norte, la Zona Marítima y por el Oeste, Ray Shackt. No hay duda sobre la validez del título que sobre la propiedad objeto en controversia reclaman poseer los apelados, pues su derecho surge del negocio jurídico válido que quedó debidamente inscrito en el Registro de la Propiedad.
De la prueba presentada por las partes, discusión de los errores 3, 5, 6, 11 y 12, surge claramente, sin temor a equivocamos, la configuración física de la propiedad objeto del litigio, de donde surgen dos títulos igualmente válidos.
Para efectos del Registro de la Propiedad, la finca Núm. 527 y la 4,735 constituyen dos fincas distintas e independientes. Sin embargo, de la prueba antes señalada surge que la porción del inmueble objeto de controversia, de la finca Núm. 527, quedó comprendida en la finca Núm. 4,735. Ello nos lleva al hecho de que nos encontramos con una situación de doble inmatriculación.
Son las consecuencias de esa realidad lo que debemos auscultar, pues ni de la información en el registro sobre la finca Núm. 4,735, así como tampoco de la escritura de compraventa de los apelantes, supra, surge la realidad extra registral del inmueble.
Las partes nunca invocaron expresamente, en el foro de instancia, la controversia jurídica a la que hemos hecho referencia, más no por ello hemos de considerarla renunciada en tanto en cuanto la prueba documental y pericial, presentada en dicho foro, la sostiene contundentemente. Harto es conocido que el título no hace la cosa. Si de las alegaciones contenidas en una demanda surge una causa de acción, la parte tendrá derecho al remedio que se ajuste a lo solicitado, sin importar el nombre que haya utilizado para ello.
En Cruz Fontánez v. Registrador, 126 D. P.R. 182, 186 (1990), se indican situaciones en las que se produce la doble inmatriculación:

“1- Cuando una misma finca se encuentra totalmente superpuesta con respecto a otra, pero constan inmatriculadas en dos folios particulares, independientes uno del otro, aunque sus respectivas descripciones (linderos, etc.) están hechas de una manera distinta.

2- Cuando una de las fincas coincide parcialmente con otra y ambas inmatriculadas en folios particulares, independientes uno del otro."

La segunda situación antes señalada se ajusta a la del caso ante nuestra consideración. Dos fincas que coinciden parcialmente, inmatriculadas en folios independientes y cuyas descripciones no coinciden por contener cabidas distintas y no haberse efectuado el tracto registral correspondiente.
Por su parte, el artículo 251 de nuestra Ley Hipotecaria de 1979, 30 L.P.R.A. See. 2776, establece el procedimiento a seguir en casos de doble inmatriculación:

"Cuando la doble inmatriculación se refiera a distintos titulares se resolverá por juicio ordinario sobre la identidad de la finca y el mejor derecho del inmueble.

En ambos casos se ordenará la cancelación de la inscripción correspondiente."
*694 En La Cruz Berdejo y Sancho Rebullida, Derecho Inmobiliario Registral, 2da. Ed., Barcelona, 1984, pág. 208, se indica:
"...para determinar, en la lucha entre titulares de folio distinto, quién lo es realmente, hay que remontarse al origen de los folios y averiguar cuál de ellos se funda en una titularidad real y por tanto, es el materialmente válido. La validez del título originario y del folio que sirve al verdadero titular para eliminar la otra inmatriculación, se determina por las reglas de Derecho Civil, pues conforme a ellas ha de averiguarse a quién correspondía el dominio al inmatricular la finca, atribución que servirá de base, en principio, a la preferencia del folio correspondiente".
A tales efectos, el Art. 1362 del Código Civil, 31 L.P.R.A. See. 3822, señala:

"Cuando no haya inscripción, pertenecerá la propiedad a quien de buena fe sea primero en la posesión, y faltando ésta, a quien presente el título de fecha más antigua, siempre que haya buena fe."

De la prueba presentada por los apelantes surge que no se ha efectuado inscripción registral de la finca Núm. 527 a partir del 15 de mayo de 1923; por el contrario la última inscripción de la finca Núm. 4,735 es de fecha relativamente reciente, 8 de marzo de 1993. Dada la inexistencia de una inscripción registral actualizada del derecho de los apelantes sobre la porción de la finca Núm. 527 de 98 céntimos de cuerda, debemos auscultar a quien correspondía el dominio al inmatricularse las fincas, o sea, quién fue el primero en la posesión de entre los que reclaman el derecho de titularidad sobre el predio en controversia.
No cabe la menor duda que los apelados nunca estuvieron en posesión de la referida porción de la finca Núm. 527, o mejor expresado, de una porción de la finca Núm. 4,735, delimitada por cercas e identificada mediante declaración pericial, discusión de los errores 3, 11 y 12. Tampoco ejercieron actos de dominio, salvo los mencionados en su alegación responsiva en el proceso judicial, y lo señalado mediante la sentencia del Tribunal de Primera Instancia, en la pág. 12. Por otro lado, de la pmeba surgen los diversos actos de dominio que realizaran los apelantes y anteriores titulares de dicha propiedad, sin haber sido perturbados o cuestionados en momento alguno, a saber:
“1 - los distintos actos de compraventa, los que surgen de la certificación registral, a contar desde el 24 de agosto de 1905, cuando adquirieron Doña Bernardina, Don Julio y Doña Eloísa de apellidos Cardona Moreno, hasta el 2 de diciembre de 1992, cuando adquirieron los apelantes Don Roque Díaz Morales y Doña Norma Luz Martínez Martínez;

2- extracción cuantiosa de arena y, años después, acomodo de relleno sobre tal área; y

3- sucesivos actos de administración y conservación del predio (limpieza, remoción de escombros, delimitación del predio mediante la instalación de verjas —con distintos materiales y en tiempos distintos— y la remoción de las palmas de coco habidas, entre otros)."
En los autos, no existe la mínima constancia de evidencia demostrativa respecto a que los apelados tuvieran en algún momento la posesión real sobre la porción de terreno que es objeto de controversia, es decir los 98 céntimos de cuerda.
Por otro lado, los apelados o anteriores poseedores del título inscrito sobre la finca Núm. 4,735 tampoco demostraron haber realizado algún acto contradictorio de dominio en cuanto a la porción anterior, se refiere con antelación al incidente que dió origen al presente litigio. En adición, del análisis al testimonio del apelado, Víctor Soto, se desprende, en lo pertinente, lo siguiente:
“1 No pudo o quiso presentar como testigo suyo a vecinos o al anterior titular del predio adquirido, para declarar respecto a sus gestiones en averiguar sobre el estado y lindes de la propiedad que interesaba. Incluso, indicó no conocer a los vecinos;

2- aceptó ver cercados los lindes del terreno ocupado por los apelantes, antes de la limpieza que realizara, que provocara el incidente inicial;

*695
3- admitió que adquirió la propiedad mediante una venta a precio alzado y nunca realizar mesura alguna sobre dicha propiedad."

De las alegaciones-de la "Demanda" o "Contestación a Reconvención"- surge que los apelantes nunca hicieron referencia al hecho de la compraventa de la finca Núm. 4,735 mediante venta a precio alzado. Sin embargo, de la exposición narrativa, aprobada por el foro de instancia, observamos que, efectivamente, en el juicio se alegó el hecho de la venta a precio alzado. El apelado y testigo Víctor Soto, contestó las preguntas del abogado de los apelantes, sin que se levantara objeción alguna al respecto.
La Regla 13.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 13.2, dispone:

“Cuando con el consentimiento expreso o implícito de las partes se sometan a juicio cuestiones no suscitadas en las alegaciones, aquéllas se consideraran a todos los efectos como si se hubieran suscitado en las alegaciones".

En vista a que no existe constancia de que los apelados objetaran la admisibilidad de dicha prueba, desfilada en instancia, resulta meritorio atender el planteamiento de los apelantes a los efectos de determinar la repercusión de tal alegación. Sepúlveda v. Barreto, _ D.P.R. _ (1994), 94 J.T.S. 158.
Cuando se realiza una venta a precio alzado el vendedor tiene que "entregar la cosa cierta que es la finca individualizada mediante la descripción de sus linderos. Todo lo que éstos comprendan ha de ser entregado a cambio del precio convenido". Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Ed. Bosch, 1982, Tomo II, Vol. 2, pág. 169.
Según explicado por nuestro más alto foro:
“La base son los linderos, no un tanto por unidad de medida. Cualquier diferencia entre la cabida expresada y la que efectivamente tiene la finca, no da margen a reclamación o indemnización". Ruidíaz Barrios v. Salas, 103 D.P.R. 922, 926 (1975).
Cuando la superficie de la finca vendida a precio alzado no coincide con la cantidad especificada por los lindes, en el contrato de compraventa, "lo gana o lo pierde el comprador o el vendedor, según sea el caso; porque lo pudo averiguar; porque fue negligente; porque se presume que quiso vender todo lo comprendido en los linderos, y al aceptar un precio alzado quedó expresado su consentimiento y perfecto el contrato". Scaevola, Código Civil, Madrid, Ed. Reus, 1970, tomo XXIII, págs. 84-85.
En definitiva, los apelados adquirieron la finca Núm. 4,735 a sabiendas de que realizaban un contrato a precio alzado, y cuya superficie estaba limitada a lo específicamente comprendido por las cercas que lindaban sobre el terreno objeto de la compraventa. Como resultado, les corresponde a ellos sufrir la pérdida de la diferencia existente entre la realidad fáctica de dicha finca y lo expresamente indicado mediante planos, constancia registral y escritura de compraventa.
En adición a lo previamente indicado, existe el agravante de que al momento en que los apelados ejercen su derecho de compraventa sobre la finca Núm. 4,735, se hizo constar, en la Escritura Número 498 sobre Compraventa, otorgada en Moca, Puerto Rico, ante el Notario Público Víctor J. Estrella Hernández, el 4 de marzo de 1993, por Inmobiliaria Internacional Incorporada, a favor de Víctor Soto Méndez y otros, la existencia de unos supuestos "agregados". Mas, ello no fue óbice para que los apelados investigaran y preguntaran directamente a tales "agregados", o a los vecinos del área, sobre la presencia de ellos en el lugar.
De la prueba surge que los apelantes poseyeron una porción definida y delimitada de la finca Núm. 4,735, equivalente a 98 céntimos de cuerda, la que reconocían como la porción de terreno qué había sido "segregada" de la finca matriz Núm. 527. Por otro lado los apelados reclaman la totalidad del predio de terreno descrito mediante la inscripción registrada de la finca Núm. 4,735. Necesariamente hay que analizar y estudiar la situación ante nos, al amparo de la figura jurídica de *696 doble inmatriculación. Por ello, los apelados se ven impedidos de disfrutar los beneficios que concede el Registro y la Ley Hipotecaria. Alameda Towers Associates, etc. v. Hon. Wilfredo Muñoz Román, _ D.P.R. _ (1992), 92 J.T.S. 2. Véase, además, discusión de los errores 7 y 8. Ciertamente, como norma general, el Registro no garantiza cabida. U.S. I. Properties v. Registrador, supra. Por su parte, los apelados adquirieron la finca Núm. 4,735 mediante la Escritura Número 49, supra, pretendiendo hacer suya toda la porción de terreno descrita mediante unidad de medida, obviando el haber adquirido en consideración a la base de sus linderos (precio alzado). Es evidente que los apelados no podrían ser considerados poseedores de buena fe, pues nunca demostraron estar en posesión de la porción del inmueble objeto de la controversia.
En su señalamiento de error, identificado con el número 2, los apelantes exponen que la propiedad que ellos alegan Ies pertenece no estaba sujeta a las disposiciones y requisitos de segregación de la Junta de Planificación ("Junta") o Administración de Reglamentos y Permisos ("A.R.P.E."). Por su parte, los apelados versan su contención en la inexistencia de la segregación debido a: (1) la falta de tracto registral indicativo de una adecuada y fehaciente segregación; (2) el incumplimiento para con la reglamentación de las agencias pertinentes; (3) la falta de evidencia admisible, acreditativa de titularidad de los poseedores y, (4) la falta de identificación adecuada de los predios objeto de la reclamación.
Es evidente que, de la prueba admitida en evidencia por el foro de instancia, no existe un tracto adecuado, que permita la identificación de la finca ni de los titulares que poseyeron el predio de terreno que los apelantes alegan les pertenece, motivado ello por el error de dicho foro al no admitir prueba ofrecida por los apelantes en ese sentido.
La constancia registral de la finca Núm. 527, inscripción primera, refleja que para el 24 de agosto de 1905 la finca objeto de la inscripción era parte integrante de un caudal hereditario, perteneciente en común pro indiviso a Don Julio, Doña Eloisa y Doña Bernardina, de apellidos Cardona Moreno, en proporción de una tercera parte, respectivamente. De la inscripción segunda surge que Doña Bernardina Cardona Moreno enajenó lo correspondiente a su parte alícuota (consistente en una tercera parte de su haber hereditario), que pasó a manos de los nuevos titulares del derecho, Don Aristides Arroyo Stéfani, casado con Doña Sinforosa Ballester Torres, el 2 de septiembre de 1915. Finalmente, y como última e inscripción tercera, surge que para el 15 de mayo de 1923, dicha finca seguía perteneciendo en común pro indiviso a Don Julio y Doña Eloisa, ambos de apellidos Cardona Moreno, conjuntamente a Don Pablo Cumba, comprador de la tercera parte que Don Aristides Arroyo Stéfani le vendiera, y todos partícipes de una comunidad en una tercera parte del inmueble.
En Colón Gutiérrez v. Registrador, 114 D. P.R. 850, 8568S7 (1983), se señala:

"La doctrina es clara a los efectos de que se requiere el consentimiento de todos los herederos en la partición que se realice".

Allí, nuestro Tribunal Supremo estableció claramente que cuando la finca objeto de una segregación es parte integrante de un caudal hereditario es necesario precisar quiénes son los llamados a participar y consentir en una operación particional, para que sea del todo eficaz.
Don Julio y Doña Eloisa, nunca fueron partícipes en los actos de traslado de dominio que, sobre el tercio del haber hereditario de Doña Bernardina Cardona Moreno, figuran del tracto registral de la finca Núm. 527. De la referida certificación registral no surge que se hubiera realizado una transformación de la participación abstracta de Doña Bernardina Cardona Moreno, en una titularidad concreta y definida, sobre una porción determinada; en consecuencia resulta imposible aceptar que de la certificación registral surja una división concreta que individualiza y consecuentemente adjudica una porción especifica; según alegan los apelantes. De ahí que el foro de instancia concluyera acertadamente que tal pretensión constituye una segregación no autorizada por los dueños del predio de terreno que hasta el 15 de mayo de 1923, sin lugar a dudas, pertenecía a una comunidad, a razón de una tercera parte del inmueble por comunero. *697 aprobación de la segregación por A.R.P.E. y la Junta, para quedar debidamente acreditada la misma. Conforme a la imposibilidad de la aplicación retrospectiva del Reglamento de Lotificación, Alicea v. Registrador, 72 D.P.R., 891 (1951), que entró en vigor el 5 de septiembre de 1944, de haberse realizado una segregación con anterioridad a la vigencia del citado reglamento, resultaría completamente innecesaria la intervención de la Junta para acreditar la segregación, toda vez que existía la escritura de segregación correspondiente, acreditativa de la fecha en que se efectuó la segregación. Mari v. Registrador, 72 D.P.R. 888, 891 (1951). Véase además, Matos v. Junta de Planificación, 66 D.P.R. 439 (1946).
En adición, la Ley Orgánica de A.R.P.E., Ley Núm. 76 de junio 24 de 1975, según enmendada, 23 L.P.R.A. Sec. 71u, dispone el carácter prospectivo de la aplicación de dicha ley en tomo a la necesidad de un permiso de la Agencia para poder ser efectuada una lotificación. Banco Comercial v. Registrador, 118 D.P.R. 773, 779 (1987).
En la evidencia ofrecida por los apelantes y no admitida por el foro de instancia, discusión de los errores 3, 11 y 12, se encuentran varias escrituras. Al examinarlas, encontramos, una vez más, la falta de indicativo preciso y necesario a los efectos de concluir sin temor a equivocación que, efectivamente, en cualquiera de las citadas escrituras, comparecieron todos los titulares de la propiedad en común proindiviso, entiéndase Don Julio y Dona Eloisa de apellidos Cardona Moreno y Don Pablo Cumba, para efectivamente enajenar o segregar una porción (la correspondiente a una tercera parte) de la totalidad del inmueble; no existe constancia de que Don Julio y Doña Eloisa, prestaran, en algún momento, su anuencia o consentimiento para validar la reducción de una tercera parte de la finca matriz que adquirieran como parte de su haber hereditario.
Ante la falta de tal indicativo es forzoso concluir que no les asiste la razón a los apelantes en su intento de demostrar que efectivamente se realizara una segregación sobre la finca matriz Núm. 527, ya no por las disposiciones reglamentarias de A.R.P.E. o de la Junta, sino por la inexistencia del vehículo público, la escritura, que legitimara tales actos de disposición o particularización de finca determinada y en común pro indiviso, a favor de un heredero o poseedor particular.
No obstante, a la inexistencia de pmeba directa sobre la supuesta segregación, existe suficiente prueba documental, como examinaremos más adelante, que refleja la capacidad de los posteriores titulares del predio en controversia para hacer suya dicha finca. Como indicó nuestro Tribunal Supremo en Sociedad de Gananciales Negroni v. Secretario de Justicia, _ D.P.R. _ (1994), 94 J.T.S. 124, en lo pertinente, si existe una cerca que establezca la colindancia, podría aplicar la usucapión.
En los señalamientos de error 3, 11 y 12, los apelantes le imputan al foro de instancia haberse equivocado: (a) al no admitir en evidencia unas escrituras que acreditaban el tracto sucesivo de la propiedad objeto de controversia; (b) determinar que la prueba documental y testifical no se ajustaban a lo solicitado en la demanda y; (c) determinar que los apelados ofrecieron prueba precisa respecto a su propiedad. Veamos.
Como norma general, las determinaciones de hecho del juez de instancia no se dejaran sin efecto por un tribunal de mayor jerarquía a no ser que sean claramente erróneas. En Maryland Casualty Co. v. Quick Const. Corp., 90 D.P.R. 329, 336 (1964), reiterado en Abudo Servera v. A.T.P.R., 105 D.P.R. 728, 731 (1977), se ha sostenido que cuando dichas determinaciones están basadas únicamente en evidencia documental o testimonio de peritos, el Tribunal Apelativo sí puede alterarlas:

“...aunque haya evidencia que las sostenga, las conclusiones de hecho de un Tribunal de anterior instancia se consideran claramente erróneas, si del examen de la totalidad de la evidencia el Tribunal de revisión queda definitiva y firmemente convencido que un error ha sido cometido, como lo es el caso en que las conclusiones de hecho están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida".

Según indicaremos a continuación, erró el Tribunal de Primera Instancia al excluir evidencia pertinente y admisible y, como consecuencia de ello, llegar a conclusiones de derecho erróneas. De la sentencia del foro aludido, surgen los datos que motivaron una decisión adversa a los apelantes, datos *698 que resumimos a continuación:

“1. La determinación de que la finca Núm. 527 estaba sujeta a lo dispuesto en la Ley Hipotecaria de Puerto Rico cuando: (a) no era ésta, sino, una porción de ésta, la finca que era objeto de controversia, (página siete (7) de la sentencia del Tribunal de Primera Instancia), y (b) no poder identificar como fincas comprendidas una porción de la Núm. 4,735 de otra porción de terreno, que tenía origen en la finca Núm. 527 (páginas 3-4, 10 y 16 de la Sentencia del Tribunal de Primera Instancia).

2. No dar valor probatorio al testimonio pericial presentado por los apelantes y apelados, a los efectos de derrotar la presunción sobre el estado físico del predio" (página 8 de la Sentencia del Tribunal de Primera Instancia), de acuerdo al Art. 104 de la Ley Hipotecaria, 30 L.P.R.A. See. 2354, que en lo pertinente dispone:

"A todos los efectos legales se presumirá que los derechos registrados existen y pertenecen a su titular en la forma, determinada por el asiento respectivo".

Según se desprende de los testimonios del perito de los apelantes, Ingeniero Humberto Rivera Ayala, del perito de los apelados, Ingeniero Roberto García Vázquez, y de los planos presentados en evidencia del Ingeniero Maldonado e Ingeniero Edilberto Cruz Martiz: (a) el predio objeto de controversia ubica "a la parte izquierda", "al lado" de la finca Núm. 4,735, "dentro de la finca de los demandados" (exposición narrativa de la prueba, págs. 13, 20 y 16, respectivamente), (b) la colindancia real del predio en cuestión exhibía una carretera vecinal pavimentada por su porción Norte, que daba acceso a las Parcelas Nieves, que a su vez lindaba con la zona marítima (páginas 5 y 6 de la Sentencia del Tribunal de Primera Instancia) versus la existencia de otro camino, el cual surge del plano del Centro de Recaudaciones Municipales ("C.R.I.M."), el que refleja la existencia de una carretera municipal, distinta y distinguible a la antes mencionada, que da acceso a la comunidad Bianchi y discurría por la porción Sur de la finca Núm. 4,735 (página 8 de la sentencia del Tribunal de Primera Instancia).

“3. La determinación de que los apelados realizaron múltiples actos de dominio sobre la totalidad de la finca Núm. 4,735 (página 12 de la sentencia del Tribunal de Primera Instancia). La prueba documental admitida por el foro de instancia apoya lo contrario, según discutido en los señalamientos de errores 1, 4 y 9. Si bien es cierto que se acreditaran varias transacciones de compraventa e hipotecas en enero de 1973, septiembre de 1974, mayo de 1982, julio de 1985 y marzo de 1993 sobre la finca Núm. 4,735, no podemos sino concluir que dichos negocios jurídicos no podían afectar a la porción de terreno objeto de controversia, pues la prueba demostró que dicha porción estuvo, sin lugar a dudas, desde 1928 (según examinaremos más adelante) bajo el control, dominio y posesión de los apelantes. Más, aún, según se desprende del negocio jurídico realizado por los apelados, ellos adquirieron la finca Núm. 4,735 mediante compraventa a precio alzado (exhibit 1, de los demandados) y cuyas consecuencias explicáramos en los señalamientos de error 1, 4 y 9 (página 11 déla sentencia del Tribunal de Primera Instancia).

4.La determinación de que los demandados estaban cobijados por la Ley Hipotecaria, al considerarlos "terceros regístrales de buena fe" (página 10 de la sentencia del Tribunal de Primera Instancia). 

5.La determinación respecto a la aplicación de la Reglamentación de A.R.P.E. y la Junta (página 22 de la sentencia - del Tribunal de Primera Instancia). 

6. No admitir evidencia pertinente al tracto posesorio de los apelantes y sus antecesores, para acreditar la posesión y cadena de títulos sobre el predio reclamado por los apelantes (páginas 7 y 8), de la sentencia del Tribunal de Primera Instancia). 

7. La determinación de que hubo una interrupción en la posesión del Sr. Jorge Tirado sobre el predio en controversia (página 11 de la sentencia del Tribunal de Primera Instancia), el cual será discutido próximamente."

*699 Por lo antes señalado, resulta necesario hacer una nueva evaluación de las determinaciones de ¡ hechos a que llegara el foro de instancia, pues no cabe la menor duda de que las referidas j determinaciones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia ante nuestra consideración. Dicho esto, es necesario examinar algunos de los documentos ofrecidos como prueba y no admitidos por el foro de instancia, para verificar su pertinencia y la ; existencia de tracto adecuado.
Las escrituras públicas no admitidas por el foro de instancia corresponden a distintos actos de dominio que datan desde el año 1928 hasta el año 1959, a saber:

“1- Escritura Núm. 84, del 12 de junio de 1928, sobre Compraventa otorgada en Aguadillo, Puerto Rico ante el Notario Público Manuel A. García Méndez, donde Don Sandalio Rodríguez Vargas y su esposa Doña Juana González le venden a Don Manuel Jiménez López y su esposa Elvira Layando Ruiz. 

2- Escritura Núm. 119, del 1 de diciembre de 1928, sobre Rescisión de Contrato y Compraventa otorgada en Aguadillo, Puerto. Rico ante el Notario Público Manuel. A. García Méndez donde las partes comparecientes en la escritura Número 84, supra, rescinden tal contrato y en su consecuencia Don Sandalio Rodríguez Vargas y su esposa Doña Juana González le venden a Don Gerardo Rivera Sánchez y su esposa Doña Sandalia González el predio de terreno en controversia. 

3- Escritura Núm. 83, del 30 de septiembre de 1929, sobre Compraventa otorgada en Aguadillo, Puerto Rico, ante el Notario Público Alberto García Ducos, donde Don Gerardo Rivera Sánchez y su esposa Doña Sandalia González le venden a Don Pablo Cumba González y su esposa Doña Gonzalo González Bonet el predio de terreno en controversia. 

4- Escritura Núm. 12, del 2 de marzo de 1935, sobre compraventa otorgada en Aguada, Puerto Rico ante el Notario Público Andrés Ruiz, Junior, donde Don Pablo Cumba González y su esposa Doña Gonzalo González Bonet le venden a Doña María Santoni el predio de terreno objeto de controversia. 

5- Escritura Núm. 77, del 26 de noviembre de 1955, sobre Compraventa otorgada en Aguada, Puerto Rico ante el Notario Público Héctor A. Sosa González, donde Doña María Santoni González le vende a Don Alfredo Santoni González y su esposa Doña María Luisa Ferrer Zapata el predio de terreno objeto de controversia. 
 "

Según se desprende de éstas escrituras, los anteriores titulares de la porción de terreno que reclaman los apelantes negociaban una misma propiedad cuya descripción era:
“RUSTICA: Sita en el Barrio Río Grande de Aguada, Puerto Rico, compuesta de noventa y ocho céntimos de una cuerda, igual a treinta y ocho áreas, cincuenta y una centiáreas y setenta y nueve miliáreas, conteniendo treinta y dos palmas de coco productivas y varias nuevas con las siguientes colindancias: Al NORTE, la zona marítima; al SUR, Manuel Jiménez; al Saliente, el Propio Manuel Jiménez; y al OESTE, Regalado González".
Con esa misma descripción adquirieron todas las personas posteriores al año 1955, hasta llegar a los apelantes Don Roque Díaz Morales y su esposa Doña Norma Luz Martínez Martínez, quienes adquirieron de Don Manuel Ruiz Valentín mediante la Escritura Número 72 sobre Ratificación de Compraventa otorgada el 2 de diciembre de 1992, en Añasco, Puerto Rico ante el Notario Público Félix González Martínez. De las referidas escritúras elas ofrecidas, y.no admitidas) so desprefide diáfanamente, que Don Julio y Doña Eloísa, cotitulares de la finca Núm. 527, en esta ocasión, tampoco prestaron su consentimiento a la segregación de la porción de 98 céntimos de cuerda, objeto del recurso. 
Del examen de la alegación primera de la demanda, se desprende la siguiente descripción dé la porción de terreno objeto de controversia:

“RUSTICA: Sita en el Barrio Río Grande del término municipal de Aguada, P.R. Compuesta de 
*700
0.98 céntimos de cuerda, equivalentes a 3851.7822 metros cuadrados. Colinda por el NORTE, con Zona Marítima antes, hoy carretera que las separa de la Zona Marítima; por el SUR, Manuel Jiménez antes, hoy Pablo Salas Mangual, Blanca Victoria Bosques, Víctor Soto Méndez y María Elena Hernández Pamies; por el ESTE, con Manuel Jiménez antes, hoy Pablo Salas Mangual, Blanca Victoria Bosques, Víctor Soto Méndez y María Elena Hernández Pamies; y por el OESTE, con Regalado González antes, hoy Ray Shackt".

Resulta más que evidente que dicha descripción coincide en su totalidad con aquella que originó la cadena de eventos jurídicos que quedaron registrados e identificados mediante sucesivas escrituras públicas. Se originan dichos eventos el 12 de junio de 1928, a saber, cuando mediante la Escritura Núm. 84 sobre Compraventa, supra, Don Sandalio Rodríguez Vargas y su esposa Doña Juana González venden la propiedad descrita a Don Manuel Jiménez López y a su esposa Doña Elvira Luyando Ruiz, y finaliza el 2 de diciembre de 1992, según mencionáramos, cuando mediante la Escritura Núm. 72 sobre Ratificación de Compraventa otorgada en Añasco, Puerto Rico ante el Notario Público Félix González Martínez por Don Manuel De Jesús Ruiz Valentín, como vendedor, y Don Roque Díaz Morales y Doña Norma Luz Martínez Martínez, como compradores, se ratifica la adquisición de la propiedad descrita por parte de los compradores efectuada en forma verbal antes del otorgamiento de la referida escritura. Si bien es cierto que dichas descripciones, a nivel textual, no son del toda exactas, en su sentido literal, se refieren a la misma propiedad, salvo que, en las alegaciones de la demanda, se adicionaron los nombres de los que, para entonces, se pensaban eran titulares de los predios que lindaban con la propiedad de los apelantes, según éstos surgían de las escrituras ofrecidas y no admitidas en evidencia.
En Sierra v. Tribunal Superior, 81 D.P.R. 554, 560 (1959) se indicó que:
“..., en el procedimiento civil moderno se acepta que las alegaciones sólo tienen una misión: notificar a grandes rasgos cuáles son las reclamaciones y defensas de las partes. Para precisar con exactitud cuáles son las verdaderas cuestiones en controversia y aclarar cuáles son los hechos que deberán probarse en el juicio, es imprescindible recurrir a los procedimientos para descubrir prueba...".
En Banco Central v. Capitol Plaza, _ D.P.R. _ (1994), 94 J.T.S. 57, se reiteró que:

“la función de las alegaciones es simplemente bosquejar la controversia...". "1m Regla 8.3 de las de Procedimiento Civil de Puerto Rico dispone que cualquier documento o escrito que se acompañe como exhibit a una alegación se considerará como parte de ésta. En ocasiones ello es conveniente, porque abunda en los hechos de la acción y puede ayudar a clarificar o detallar los mismos

Entendemos que la descripción detallada del predio que hacen los apelantes no es sino una muestra de su ánimo y preocupación en tratar de establecer con toda claridad la identidad de la finca cuya posesión no había sido interrumpida por los apelados.
Conforme a lo mencionado, necesariamente hay que concluir que no le asiste la razón al foro de instancia cuando no admitió las escrituras señaladas del número 1 al 5, en las páginas 27 y 28 de esta sentencia, bajo el fundamento de que la descripción del predio de terreno objeto de controversia, descrito en la demanda, no coincidía con las descripciones de las referidas escrituras. Le asiste la razón a los apelantes en su contención de que dichas escrituras debieron ser evaluadas como parte de la prueba en instancia, pues su pertinencia y relevancia constituian el requisito sine qua non para demostrar el tracto extra-registral de la porción de terreno específica que poseyeron, en adición a sus anteriores dueños, por espacio de sesenta y cuatro (64) años, comenzando en el año 1928.
Establecida la pertinencia y relevancia de las escrituras ofrecidas y no admitidas en evidencia en el proceso, escrituras que corresponden a la porción de terreno que los apelantes describieron en la alegación primera de su demanda y que reclaman como suya, necesariamente habría que pasar juicio respecto a: (a) la admisibilidad de dicha prueba y, (b) la determinación del foro de instancia a los efectos de evaluar si efectivamente hubo una interrupción en la posesión natural del inmueble, que impidiera a los apelantes reclamar la titularidad del mismo mediante prescripción extraordinaria.
*701 En tomo a la admisibilidad de la prueba, como bien señalan los apelantes en su escrito de apelación, la misma constituye una de las excepciones a la Regla sobre Prueba de Referencia, 32 L.P.R.A. Ap. IV, R. 65 (N):
"(TV) Récords oficiales sobre propiedad: Evidencia del registro oficial de un documento que afecte un derecho o interés en propiedad, mueble o inmueble, para demostrar el contenido del documento original y su otorgamiento, inclusive la entrega por cada persona que aparece otorgándolo, siempre que el registro fuera un récord oficial de una oficina gubernamental y estuviere autorizado por registro de tal documento en dicha oficina".
Las escrituras a que hacemos referencia constituyen documentos públicos, otorgados por funcionarios autorizados por ley para ello (Notario Público), con las que se podía demostrar, sin lugar a dudas, el tracto alegado del inmueble. El artículo 2 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. See. 2002, dispone al respecto:

"El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales".

Por su parte, el artículo 6, de la referida Ley Notarial, 4 L.P.R.A. See. 2006, dispone:

"El notario redactará escrituras matrices, expedirá copias y formará protocolos".

Ni de los autos originales del caso, como tampoco de los escritos de las partes, se desprende que los apelados presentaran, en momento alguno, objeción fundamentada respecto a la inadmisibilidad de las escrituras ofrecidas en evidencia. Por otro lado, no tienen razón los apelados cuando señalan en su alegato que durante el juicio en su fondo "ninguno de los testigos hizo mención [ ] sobre dicha prueba". De la Exposición Narrativa, aprobada por el foro de instancia, como tercer testigo de la parte demandante declaró Don Cesar A. Santoni Correa, quien identificó el inmueble objeto de controversia del que fue titular su padre, Don Alfredo Santoni González. Don Alfredo fue el poseedor en pleno dominio del referido inmueble, desde el año 1955 hasta el año 1959, cuando lo vendió a Correa & Tirado, habiéndolo adquirido Don Alfredo mediante la Escritura Número 77 sobre Compraventa, otorgada en Aguada, Puerto Rico por Doña María Santoni González a favor de Don Alfredo Santoni González y esposa, el 26 de noviembre de 1955, ante el Notario Público Héctor A. Sosa González. 
Respecto a la determinación del foro de instancia en cuanto a que hubo interrupción natural de la posesión del inmueble objeto de controversia, no le asiste la razón. Si bien es cierto que Don Luis Felipe Díaz Morales testificó en la vista en su fondo sobre el hecho de que había comprado el referido inmueble con el propósito de realizar una obra de extracción de arena, que terminada la obra dejó la propiedad con un gran hoyo y se fue a Bayamón, también es cierto que dejó claramente establecido que dicho inmueble quedó debidamente cercado, pues "sus equipos [de extracción] se encontraban allí'. 
Los artículos 360-362 del Código Civil de Puerto Rico, 31 L.P.R.A. Sees. 1421-1423, establecen, en lo pertinente, que la posesión natural existe cuando una persona se sirve de una cosa corporal, para conservarla o disfrutarla, por sí y para sí. El dejar una propiedad inmueble debidamente cercada, protegida y conteniendo en ella equipo de trabajo, no constituye la interrupción en la posesión a que hace referencia el artículo 389 de nuestro Código Civil, 31 L.P.R.A. 1475, "por abandono de la cosa". En adición, el artículo 388 del referido Código dispone que:

"El poseedor actual que demuestre su posesión en época anterior, se presume que ha poseído también durante el intermedio, mientras no se pruebe lo contrario".

Ni de los autos originales, como tampoco de los escritos de las partes, se desprende que los apelados presentaran, en momento alguno, prueba demostrativa de la posesión material sobre el predio en controversia, de manera tal que derrotaran la presunción existente a favor de los apelantes, señalada anteriormente mediante, discusión de los errores 5 y 6.
*702 En consideración a lo antes discutido, concluimos que les asiste la razón a los apelantes cuando en su señalamiento de error número 11, señalan que la prueba documental y testifical se ajustaba a lo solicitado en la demanda.
Por otro lado, los apelantes sostienen que el foro de instancia no tuvo ante su consideración suficiente prueba testifical que acreditara la titularidad del inmueble que alegan los apelados les pertenece. Señalan que los dos testigos que presentaran los apelados no pudieron establecer con prueba fehaciente, precisa y congmente la titularidad sobre la finca Núm. 4,735.
Para establecer el título acreditativo que sobre un inmueble alegan sus titulares, no se requiere determinado número de testigos. Un solo testigo que merezca entero crédito es suficiente para la comprobación de tal hecho o circunstancia. Es decir, lo que se requiere es que se demuestre a . satisfacción del tribunal tal contención. Regla 10(D) de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 10 (D) que dispone, en lo pertinente, lo siguiente:

"El tribunal o juzgador de los hechos deberá evaluar la evidencia presentada, a los fines de determinar cuáles hechos han quedado establecidos o demostrados, con sujeción a los siguientes principios:

"(A)...

(b)...

(C)...

(D) La evidencia directa de un testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que por ley otra cosa se disponga".

Por lo tanto, no les asiste la razón a los apelantes respecto a su señalamiento de error número 12.
En sus señalamientos de error 5 y 6, estos alegan que el foro de instancia erró al no acreditar como poseedores de una porción de la finca Núm. 527, el predio de terreno objeto de controversia, a los titulares de la misma con anterioridad al año 1959, y por ende, no considerar el derecho adquirido por éstos mediante prescripción extraordinaria, en defecto de tampoco habérseles considerado poseedores con justo título.
Por su parte, dicho foro utilizó como justificación para su contención:

“(A) que no existía correlación o identidad entre las descripciones de la propiedad que reclamaban los apelantes en su demanda, con aquellas que surgen de las escrituras presentadas y admitidas en evidencia;

(B) que no podía operar la prescripción extraordinaria a favor de los apelantes sobre la finca Núm. 4,735, por existir título inscrito a favor de los apelados, quienes eran terceros regístrales, de buena fe, conforme a las disposiciones de la Ley Hipotecaria y quienes habían negado los efectos de la usucapión consumada o en vías de consumación, antes del año de su adquisición;

(C) que no podía operar prescripción extraordinaria sobre la finca Núm. 527, a favor de los apelantes, por faltar parte indispensable en el litigio."

Según discutimos en los señalamientos de error 3,11 y 12, no es correcta la determinación del foro de instancia al considerar distintos, separables e independientes los predios descritos en la demanda con respecto a las escrituras de compraventa presentadas por los apelantes y no admitidas. Tampoco fue correcta su determinación de validar la porción de la finca Núm. 527 y la porción de la finca Núm. 4,735, objeto de controversia, como fincas distintas, según lo indicado en la discusión de los señalamientos de error 1,4 y 9.
Por otro lado, no es correcta la determinación de dicho foro sobre ausencia de parte indispensable *703 en el litigio para adquirir el predio objeto de la controversia mediante prescripción extraordinaria. Si bien es cierto que: (a) de conformidad a la certificación registral. para el año 1923 la finca Núm. 527 correspondía a varios titulares en común pro indiviso, y, (b) que en el proceso judicial los apelantes no demostraron satisfactoriamente el momento, si alguno,, en el que se realizara la segregación de la porción de terreno alegada, también es cierto que, según el estado de derecho vigente, el titular del dominio o del derecho real a usucapir no puede ser la misma persona que pretende ejercitar la acción mediante prescripción extraordinaria. Esto sólo le es permitido a quienes cumpliendo con los requisitos necesarios, poseen en concepto de dueño, sin serlo.
“...la usucapión solamente puede operarse contra el titular del dominio o derecho real usucapido. Faltando, pues, esta exigencia, no se dará la legitimación retrospectiva, siendo ineficaz la pretendida usucapión". (Enfasis suplido). Vásquez Bote, Eduardo, Tratado Teórico, Práctico y Crítico de Derecho Privado Puertorriqueño, New Hampshire, Ed. Equity, 1991, Vol. VII, pág. 377.
Los apelantes demostraron haber adquirido la titularidad del predio de terreno en controversia, es decir, una porción de la finca Núm. 527 mediante contrato oneroso válido, según se desprende de la Escritura de Ratificación de Compraventa Núm. 72. Por ende, se ven impedidos -de reclamar mediante usucapión un predio de terreno sobre el cual ostentan la titularidad. 
De otra parte, si consideráramos el hecho de la posesión de los apelantes de una porción de terreno sobre la finca Núm. 4,735, descartando momentáneamente el hecho de la existencia del problema sobre doble inmatriculación, no tendríamos más que señalar que la prescripción extraordinaria sólo beneficiaría a la parte que demuestra su título conforme exige la ley; es decir, que se demuestre:

“l. Posesión continua e ininterrumpida,

2. pública,

3. pacífica, y

4. en concepto de dueño."

De los autos se desprende reiteradamente el hecho de la posesión continua e ininterrumpida de los apelantes sobre el predio en controversia, discusión de los errores 1, 4 y 9.
Posesión pública y pacífica en la medida en que la prueba desfilada en el foro de instancia no arrojó muestra alguna de lo contrario, máxime cuando los vecinos del área, que testificaron en el juicio, declararon a los efectos de corroborar algunos de los distintos actos de dominio realizados sobre el predio en cuestión.
Indudablemente, en concepto de dueños, pues, para los vecinos del área, no existieron otros dueños que los que poseyeron aquella porción del inmueble en disputa por espacio de 64 años, discusión de los señalamientos de error 3, 11 y 12.
Los apelados no demostraron durante el juicio plenario el haber otorgado permiso o autorización alguna para que los apelantes poseyeran una porción del inmueble a su nombre, por mera tolerancia. No intentaron derrotar la prueba presentada por los apelantes sobre la evaluación objetiva requerida en tomo a su posesión en concepto de dueños. Dávila v. Córdova, 77 D.P.R. 136 (1954).
Según señalado en Asoc. Auténtica Empl. v. Municipio de Bayamón, 111 D.P.R. 527, 531 (1981):

"La obligación de presentar evidencia primeramente recae sobre la parte que sostiene la afirmativa en la cuestión en controversia".

Sin embargo, una vez establecido un hecho, se activa la presunción de corrección del hecho; la parte contra la cual se estableció tiene el nuevo peso de la prueba para producir evidencia y persuadir al juzgador de lo contrario.
*704 "... Si la parte contra la cual se establece la presunción no ofrece evidencia para demostrar la no existencia del hecho presumido, el juzgador debe aceptar la existencia de tal hecho". 32 L.P.R.A. Ap. IV R.14.
En vista de que los apelados no negaron o controvirtieron las alegaciones de los apelantes, durante el juicio plenario, no existe controversia sobre la posesión de éstos respecto a la porción de terreno en disputa, de forma continua, ininterrumpida, pública, pacífica y en concepto de dueños.
Examinada la totalidad de la evidencia, concluimos que en el foro de instancia se presentó prueba satisfactoria sobre todos los requisitos necesarios para adquirir mediante prescripción extraordinaria la porción de terreno reclamada por los apelantes sobre la finca Núm. 4,735. Estos tienen razón cuando alegan que la porción de terreno les pertenece, habida cuenta del derecho adquirido por prescripción extraordinaria.
Pasemos a la discusión de los errores 7 y 8. Consistente con lo previamente discutido en los errores 1, 4 y 9 es necesario subrayar lo que nuestro Tribunal Supremo ha reiterado en diversas ocasiones. En Pérez Cruz v. Fernández, 101 D.P.R. 365, 371 (1973), se señaló:

“El tribunal de instancia declaró con lugar la sentencia sumaria solicitada por los demandantes. Concluyó la certeza de la tercería registral de Litheda, pero le negó la protección de la Ley Hipotecaria debido a que se trataba de un caso de doble inmatriculación en el Registro de la Propiedad y por tanto éste se inhibe, no extendiendo su protección al tercero".

Años más tarde, el Tribunal Supremo reiteró la decisión, según surge en Pérez Cruz v. Fernández Martínez, 106 D.P.R. 144, 150 (1977):

"Nos confrontamos con un caso de doble inmatriculación aun cuando en la agrupación efectuada en el año 1938 no se hizo figurar la 471 como agrupada junto con las otras para formar la número 6206. En consecuencia, no es oponible la defensa de tercero registral en que se ampara Litheda".

En Puerto Rico se ha resuelto, según la doctrina y la jurisprudencia aplicable, que no es oponible la defensa de tercería registral, levantada por un demandado, cuando existen problemas de doble inmatriculación. Existente este problema en autos, huelga discutir si los apelados son o no terceros regístrales. Consecuentemente, resulta académico considerar si fue probada o no la buena fe del tercero registral, toda vez que el ejercicio no ayudaría para la disposición del presente recurso.
Pasemos a la discusión del error número 10. Veamos.
En su sentencia, el foro de instancia hace una alocución en tomo a la no procedencia de una acción de reinvindicación. Los apelantes alegan como error en su recurso, según surge del examen de la demanda y del escrito de apelación, que nunca han pretendido hacer suya la propiedad de los demandados aquí apelados, que éstos no han poseído su propiedad y, en su consecuencia, pretenden establecer que se trata de propiedades distintas sobre las cuales existe un problema de colindancia, por lo que habían solicitado una Acción de Deslinde; indican que nunca solicitaron una acción de reinvindicación.
Según surge de la sentencia, el foro de instancia no atendió de forma alguna lo concerniente a la Acción de Deslinde; ello fue así, y con razón. Veamos.
La Acción de Deslinde estaba regulada por la Regla 34(b) de las Reglas de Enjuiciamiento Civil de 1943, 32 L.P.R.A. Apéndice I. Ciertamente, luego de la derogación de dicha ley, en agosto de 1979, quedaron una serie de casos interpretativos, en adición a lo dispuesto en los artículos 319-321 del Código Civil de Puerto Rico, 31 L.P.R.A. Sees. 1211-1213.
Según surge de la propia ley, se le reconoce a todo propietario la capacidad para ejercer el deslinde de su finca. El artículo 319 del Código Civil de Puerto Rico, 31 L.P.R.A. See. 1211, señala:

"Todo propietario tiene derecho a pedir el deslinde de su propiedad, con citación de los dueños de 
*705
los predios colindantes".

El propósito de dicha acción consiste en determinar los linderos confundidos en heredades contiguas. Zalduondo v. Méndez, 74 D.P.R. 637, 641-642 (1953). El procedimiento puede ejercitarse en cualquier tiempo y la sentencia dictada a tales efectos no constituye cosa juzgada entre las partes, pues la misma ni da ni quita derechos; de aquí que sea posible realizar la operación de deslinde toda vez que surge una nueva causa para repetir la acción, Zayas v. Autoridad de Tierras, 73 D.P.R. 897, 900-901 (1952).
Sin embargo, existen dos factores contundentes que limitan la capacidad de los. apelantes a reclamar en estos momentos el derecho a tal acción. Ellos son: (1) una demanda en acción de deslinde requiere que en la demanda se haga constar el requerimiento hecho a la parte en posesión de la propiedad que motiva tal acción y la negativa de ésta. Zayas v. Autoridad de Tierras, supra, a la pág. 641; (2) cualquier demanda en acción de deslinde constituye un impedimento para ejercitar conjuntamente una acción por prescripción o usucapión. Zalduondo v. Méndez, supra, a la página 644 (indebida acumulación de acciones ordinarias y extraordinarias). Los factores antes mencionados son condiciones presentes y aplicables en.el caso de autos, que hacían del todo imposible.ejercitar la Acción de Deslinde.
En su lugar, la interpretación del foro de instancia a los efectos de discutir la Acción de Reinvindicación resulta del todo razonable, toda vez que de las alegaciones de la demanda surgía la posibilidad de tal remedio: restituir la posesión del inmueble objeto de la reclamación. Una vez más nos vemos en la obligación de recurrir a lo dispuesto en la Regla 10.2 de las de Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. III, R.10.2, supra. Si de las alegaciones en una demanda surge una causa de acción, la parte tendrá derecho a solicitar el remedio que se ajuste a lo solicitado, sin importar el nombre que haya utilizado para ello.
En vista de que los apelantes renunciaron expresamente la oportunidad de discutir lo referente a la acción de reinvindicación, en su escrito de apelación, huelga discutir algo más sobre este señalamiento de error.
El error número 13 planteado por los apelantes gira en tomo a la supuesta omisión del foro de instancia en aplicar la Doctrina del Enriquecimiento Injusto.
Los apelantes alegan que si el referido foro entendió que efectivamente se había rellenado un área de terreno perteneciente a los apelados, debía entonces compensárseles por la inversión, hecha de buena fe, y por haber actuado bajo la creencia de que eran dueños de la propiedad rellenada.
Tal remedio no es apropiado bajo las circunstancias del presente caso. No se puede reconocer la existencia de un cuasi contrato donde se ha realizado una gestión para fines personales; rellenar un predio de terreno cuya titularidad les pertenece, discusión de los señalamientos de error 3, 5 y 7. Véase, 31 L.P.R.A. 5101-5107. Véase además, Vélez Colón v. Iglesia Católica, 105 D.P.R. 123 (1976). Este error no fue cometido por el Tribunal de Primera Instancia.
Respecto al señalamiento de error número 14, no coincidimos con la apreciación de los apelantes en tomo al mismo. Si bien es cierto que existen varias similitudes en tomo a la "Sentencia” emitida por el foro de instancia y el "Memorando de Derecho" sometido por los apelados, una evaluación seria y objetiva de dichos documentos nos llevan a la conclusión de que los mismos no constituyen escritos idénticos o tan siquiera similares. A tales efectos cabe señalar:
“No sugerimos que deba desalentarse la práctica que suele seguirse en los tribunales de instancia de solicitar y recibir de las partes proyectos de determinaciones una vez sometidos los asuntos al juez para su adjudicación. Al igual que la presentación y uso de memoriales escritos, estas medidas sirven para aliviar el enorme volumen de trabajo que pesa sobre los jueces de instancia y pueden ser de valiosa ayuda al juez en el descargue de su delicada función delegable". Malavé v. Hosp. De la Concepción, 100 D.P.R. 55, 56-57 (1971).
Aún cuando en los documentos señalados se cometiera idéntico error, identificar a la *706 representación legal de la parte apelada con un apellido incorrecto, entendemos que ello no es razón necesaria para concluir en forma definitiva, que el juez sentenciador incurriera en el error señalado. Véase además, Román Cruz v. Díaz Rifas, 113 D.P.R. 500; Ramos Robles v. García Vicario, _ D.P.R._, 93 J.T.S. 167, 11395, 11401.
Una identificación equivocada de una persona particular en varios documentos, entre los cuales está la sentencia del juzgador de los hechos, muy bien podría ser considerado como elemento adicional para concluir lo que aducen los apelantes, más ello por sí sólo no constituye una relación de causalidad y efecto, que tienda a demostrar que el Juez de Instancia adoptó el escrito titulado "Memorando de Derecho" de los apelados como su sentencia. De la comparación de los documentos aludidos no surge que se cometiera el error señalado.
Por lo antes expuesto se revoca la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Aguadilla el 8 de noviembre de 1995 y en su lugar declaramos Ha Lugar la demanda de los apelantes y Sin Lugar la reconvención de los apelados.
En consideración a lo resuelto, se devuelven los autos al foro de instancia para que una vez la sentencia emitida advenga final y firme celebre una vista evidenciaría a los fines de determinar los daños reclamados por los apelantes, si algunos; se ordena al Registrador de la Propiedad, Sección de Aguadilla, una vez esta sentencia advenga final y firme a realizar aquellas correcciones registrales pertinentes en la finca Núm. 4,735 inscrita al folio 180, del tomo 159 de Aguada conforme a los términos de esta sentencia.
Lo pronunció el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General