H. F., INC., interesado-recurrente, *v.* HON. GLORIANA RUIZ, REGISTRADORA DE LA PROPIEDAD DE HUMACAO, registradora-recurrida.

*Número:* O-85-16 *Resuelto:* 10 de junio de 1985

434

*Gloria Ortega Otero,* abogada de la recurrente; la Registradora recurrida compareció por escrito.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

En el vasto campo del Derecho, incluso en el área de hermenéutica legal, cabe la expresión de Unamuno, "[h]ay que convertir en reflexión el instinto si se quiere que llegue a ser instintiva la reflexión". M. Alonso Pedraz, *Ciencia del lenguaje y arte del estilo,* 12da ed., Madrid, Ed. Aguilar, 1975, Vol. I, pág. 17.

I

El 19 de octubre de 1984, los esposos Martín Benabe Figueroa y María M. Rivera, suscribieron a favor de la entidad H. F., Inc., la Escritura Núm. 1126 sobre *Primera Hipoteca,* ante el notario Miguel García Suárez. El 26 de octubre de 1984, a las 10:40 A.M., la acreedora H. F., Inc. la presentó para su inscripción en el Registro de la Propiedad, Sección de Humacao, asiento 578 del Diario de Operaciones Núm. 475. El 6 de diciembre, la Registradora, Lic. Gloriana Ruiz, notificó por correo regular al presentante una falta resultante de una discrepancia en la descripción de la cabida. Dicha funcionaria consignó que a los veinte (20) días —el 26 de diciembre— se entendería consentida la falta de no radicarse escrito de recalificación.

El 24 de diciembre, H. F., Inc., remitió al Registro, por correo certificado con acuse de recibo, un Escrito de Recalificación. El 26 de diciembre, la Registradora extendió en el Diario de Operaciones, al margen del asiento de presentación y en el propio documento, nota indicativa de que se consintieron los defectos. El escrito de recalificación fue recibido en el Registro el 27 de ese mes. Inmediatamente, la Registradora cursó una carta al Lic. Raúl J. Torres Bobonis, en la cual le

indicaba que no podía considerarlo porque la falta había sido consentida desde el día anterior, al no haberse interrumpido el término de caducidad de veinte (20) días establecido en la Ley Núm. 198 de 8 de agosto de 1979 (Ley Hipotecaria y Registro de la Propiedad).

Inconforme, el 15 de enero de 1985, H. F., Inc., presentó recurso gubernativo. En síntesis, sostiene que dicho término quedó suspendido en la fecha en que depositó en el correo su Escrito de Recalificación (24 de diciembre). Aduce además, que son aplicables los tres (3) días adicionales, concedidos en la Regla 68.3 de Procedimiento Civil de 1979. Finalmente nos invita a que pasemos juicio sobre los méritos de la falta notificada en la calificación original. Oportunamente, la Registradora ha sometido su alegato de oposición.

## II

■ El procedimiento de "recalificación", consignado en nuestra Ley Hipotecaria, se instituye como un paso previo a la presentación del recurso gubernativo, y brinda al Registrador la oportunidad de reconsiderar su calificación original. Este concepto es establecido en nuestra legislación, ante el clamor de la doctrina, que venía "preconizando el establecimiento de un recurso de reposición contra la calificación, para que, en vista de los argumentos y razones que en él se aduzcan, pueda el Registrador modificar su criterio si aquéllos le convencen, evitándose así la tramitación del recurso gubernativo". T. Ogayar Ayllón, *Impugnación de la Calificación Registral*, 50 Rev. C. Der. Inmob. 11, 22 (1974). Este procedimiento es fijado en el Art. 70 de nuestra ley, el cual lee:

> No obstante lo dispuesto en [el Artículo] anterior, el presentante o el interesado que no esté conforme con la calificación del Registrador *podrá, dentro del término improrrogable de 20 días siguientes a la fecha de la notificación, radicar personalmente con el Registrador o remitirlo por correo certificado, un escrito solicitando recalificación,* exponiendo sus objeciones a la calificación, los fundamentos en

que apoya su recurso y una súplica específica de lo que interesa. *Transcurridos los 20 días se entenderán consentidos los defectos señalados por el Registrador*. (Énfasis suplido.) 30 L.P.R.A. sec. 2273.

La recurrente, H. F., Inc. argumenta que el Legislador, al consagrar que el presentante o el interesado "podrá", fijó un término directivo y proveyó dos alternativas para la radicación de un escrito de recalificación dentro de los 20 días reglamentarios: personalmente o por correo certificado. Si opta por enviarlo por correo certificado, ello asegura una fecha cierta dentro de los 20 días reglamentarios. A su juicio, la fecha determinante es el depósito en el correo y no la fecha en que arriba al Registro. Finalmente concluye, que si se computa desde que el documento es recibido en el Registro, "se estaría acortando el término de 20 días, lo cual no fue la intención del legislador".

### III

■ Una de las características o principios [1] del Derecho Registral es su naturaleza rogada. "En armonía con el carácter privado de la finalidad inmediata a la que el procedimiento se halla ordenado, es procedimiento dispositivo, se inicia a instancia de parte. Como dice don Jerónimo GONZÁLEZ, no basta con que llegue a su conocimiento la realización de actos o la consumación de hechos que alteren la situación hipotecaria de una finca o derecho, sino que será precisa una manifestación de voluntad, más o menos formal, por parte de los interesados, para que el encargado del Registro proceda a prac-

---

[1] Diversos autores postulan que el carácter rogado del procedimiento no posee la categoría de principio. Sobre esta controversia doctrinal, expone Roca Sastre, "[n]osotros no damos excesiva importancia a la cuestión de si el criterio de rogación o instancia, necesario, en general, para poner en marcha el procedimiento registral o de inscripción, tiene o no la categoría *de principio hipotecario*, aunque sea de *índole formal* y no sustantivo o material, pues lo importante y decisivo es que tal criterio de rogación exista, independientemente de que se le dé o no la jerarquía de principio hipotecario". R. M. Roca Sastre y L. Roca-Sastre Muncunill, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. II, pág. 162.

438

ticar las operaciones correspondientes." J. L. Lacruz Berdejo y F. A. Sancho Rebullida, *Derecho Inmobiliario Registral*, Barcelona, Ed. Bosch, 1968, págs. 348–349.

 El proceso registral se encuentra constituido por una serie ordenada de actos: petición de inscripción, presentación de documentos, calificación del Registrador y la extensión del asiento. A. Sanz Fernández, *Instituciones de Derecho Hipotecario*, Madrid, Ed. Reus, 1953, T. II, pág. 183. Tanto la petición de inscripción como la presentación de documentos, en conjunto e inherentemente, constituyen "el ruego". Una vez propiamente solicitado, se entra en un proceso automático. ". . . El carácter privado de los derechos sujetos a inscripción y el carácter público del Registro, se concilian no permitiendo que éste se ponga en marcha más que a petición de parte —carácter rogado—; pero hecha esta petición, pasan a primer plano las consideraciones de orden e interés público y el procedimiento sigue por los trámites taxativamente marcados por la Ley y el Reglamento —carácter automático—, sin que sea dado al Registrador alterar u omitir dichos trámites, y sin dar apenas intervención a los particulares." Sanz Fernández, *op. cit.*, págs. 83–84. De ser la calificación en la negativa, y no estar conforme el interesado, se presenta —en nuestra jurisdicción— la petición de recalificación que, igualmente, constituye un recurso de naturaleza rogada.

 Por razón de esta característica, debemos identificar el momento preciso de ruego, el cual pone en marcha el procedimiento registral. La doctrina ha diferenciado dos momentos: la petición y la presentación. "La diferencia entre petición y presentación es clara. La primera es una declaración de voluntad dirigida a poner en marcha el procedimiento registral, y de aquí que, conceptualmente al menos, sea anterior a él. La presentación es un hecho material, aunque de importantes consecuencias jurídicas, complementario de aquélla, y que constituye el primer trámite del procedimiento. Conse-

cuencia de esta separación entre ambos conceptos es que *la presentación puede ser posterior a la petición —lo que ocurrirá generalmente en los casos de petición escrita—*, simultánea a ella —como ocurrirá en los casos de petición verbal y tácita—, o anterior —por ejemplo, la petición de anotación de defectos subsanables—." (Énfasis suplido.) Sanz Fernández, *op. cit.*, pág. 88.

Por ello, aun considerando que la petición de recalificación se efectúa al momento de remitir la comunicación escrita, la presentación (o "radicación", como la denomina nuestra ley) no se perfecciona, hasta el momento de su arribo ante el Registrador. Véanse: R. M. Roca Sastre y L. Roca-Sastre Muncunill, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. II, pág. 167; B. Camy Sánchez-Cañete, *Comentarios a la Legislación Hipotecaria*, 3ra ed., Pamplona, Ed. Aranzadi, 1982, Vol. I, págs. 286–289; J. M. Chico y Ortiz, *Estudios sobre Derecho Hipotecario*, Madrid, Ed. M. Pons, 1981, T. I, págs. 628–629.

■ Para poder salvar esta ilación doctrinal, resultaría necesaria una disposición expresa en la ley. Ésta no existe. Nuestra Ley Hipotecaria establece la regla general de que los documentos deben ser presentados al Registro personalmente, y no se admiten los recibidos por correo. En lo pertinente el Art. 34 de la ley dispone:

> La presentación de los documentos ha de ser personal y no se admitirán documentos que para su registración se reciban por correo. Al momento de la presentación se hará constar en el asiento que corresponda en el libro Diario el nombre del presentante, la fecha y hora de la presentación y se identificará el título presentado, y una breve referencia a los documentos complementarios que lo acompañen pudiéndose redactar el resto del asiento dentro de ese mismo día natural. 30 L.P.R.A. sec. 2154.

Las contadas excepciones a este requisito se encuentran expresamente establecidas. Una de ellas es el artículo que nos

ocupa. La permisibilidad de remitir escritos por correo se sustenta en la legítima finalidad de facilitar la tarea a todo interesado en presentar y solicitar una recalificación.

Igual enfoque existe en España; la excepción es la presentación por correo, aunque allá no se requiere que sea certificado. Art. 418 del Reglamento Hipotecario. Diversos autores debaten la razón de ser y utilidad del método de remisión por correo. Centran el análisis con relación a la figura del presentante como mandatorio. Así, al discutir críticamente la cuestión encuentran como justificación la necesidad de que el método de presentación por correo posea la característica de dejar fiel constancia del nombre del presentante como parte indispensable del trámite básico registral. Camy Sánchez-Cañete nos ilustra: "Si el Registrador admite en el Diario de presentación el documento que le fue remitido por correo, no se puede intuir ya dónde queda la figura del presentante ni para qu[é] sirve el artículo 6°. de la Ley Hipotecaria, pues en estos casos el asiento de presentación no podrá recoger nombre alguno del presentante, que realmente no existe, *salvo en el caso improbable de que la remisión se hiciese por correo certificado*, y, en consecuencia, dicho asiento se limitará a indicar, que en la hora de que se trate se presenta en el Registro un documento remitido por correo, continuándose en cuanto a lo demás este asiento de presentación conforme al texto del modelo oficial." (Énfasis suplido.) Camy Sánchez-Cañete, *op. cit.*, págs. 286–287. Igual discusión elabora Roca Sastre, *op. cit.*, pág. 167, aunque se aparta de las críticas y conclusiones de Camy en torno a la utilidad de la figura del presentante.

■ En Puerto Rico, distinto a España, se requiere el correo certificado. El método armoniza con la figura del presentante. Es, pues, perfectamente compatible con el carácter improrrogable dispuesto por el Legislador en el Art. 70. Es también evidente que el método por correo certificado no pudo

tener el propósito de extender y derrotar el carácter jurisdiccional de dicho término. (²)

Resumiendo, en una perspectiva integral del diseño vigente y la dinámica registral, el método excepcional de presentación por correo, forzosamente tiene que ser *certificado*. Así armoniza con las características de datos personales que es menester perpetuar en el libro Diario de presentación en torno a la persona del "presentante", sobre la cual la Ley Hipotecaria impone una serie de consecuencias jurídicas.

 En conclusión, resolvemos que la única interpretación posible a tono con la doctrina, el texto y el espíritu del Art. 70 es en el sentido de que, el uso del correo certificado está disponible para una parte interesada presentar un escrito de recalificación, siempre y cuando el mismo sea entregado por el correo en el Registro dentro de los veinte días aludidos. Su utilización es a riesgo de dicha parte. (³) Esta interpretación es la única que, contrario a la tesis de la recurrente H. F., Inc., ni acorta ni alarga el término. De este modo, tampoco erosiona el principio de publicidad registral y sus efectos frente a terceros, quienes a partir del vigésimo primer día, tienen el derecho a descansar en la premisa establecida por el Legislador de que la falta se estimó consentida.

---

(²) El Legislador estaba consciente de que existía la alternativa de darle el depósito en el correo, la capacidad de perfeccionar la notificación. Así el Proyecto de la Cámara de Representantes, P. de la C. 522, del 16 de febrero de 1978, "Para derogar la Ley Hipotecaria vigente y su reglamento y para adoptar una Ley del Registro de la Propiedad", disponía en su Art. 71, para la notificación de corrección de faltas: "La notificación por correo quedará perfeccionada al ser depositada en el correo." No obstante el Art. 81, que comprendía el procedimiento de recalificación, no hacía esta salvedad. Por el contrario disponía el carácter improrrogable del término, concepto que se *incorporó* en la legislación final.

(³) Desde principios de siglo, resolvimos que para acudir ante nos contra la calificación inicial del Registrador —procedimiento que bajo la anterior legislación era el recurso gubernativo— un escrito remitido por correo dentro del término legal, y llegado con posterioridad a los 20 días indicados en la ley, no tenía el efecto de interrumpir el término. *Soc. Agri. de Gurabo v. Reg. de la Prop.*, 18 D.P.R. 818 (1912).

## IV

■ Nos resta discutir la alegación de la recurrente en el sentido de que la Regla 68.3 de Procedimiento Civil, (⁴) tiene aplicación en estas circunstancias. Arguye que al plazo de veinte (20) días del Art. 70 se deben agregar tres (3) días adicionales. Este argumento pasa por alto que las Reglas de Procedimiento Civil no aplican a los trámites relativos al Registro de la Propiedad, excepto cuando por mandato expreso el Legislador así lo dispuso. (⁵)

Ante el hecho no contradicho, de que el escrito de recalificación de la recurrente H. F., Inc. fue recibido en el Registro de la Propiedad después de los veinte (20) días de la notificación del defecto, actuó correctamente la Registradora al sostener que la falta ya había sido consentida.

En virtud de lo dispuesto en el Art. 76 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2279, este Tribunal carece de jurisdicción para resolver en sus méritos y pasar juicio sobre la corrección de la calificación.

*Se dictará sentencia que desestime el recurso por falta de jurisdicción.*

El Juez Asociado Señor Ortiz no intervino.

---

(⁴) Regla 68.3. "Siempre que una parte tenga derecho a realizar, o se le requiera para que realice algún acto dentro de determinado plazo después de habérsele notificado un aviso u otro escrito, y el aviso o escrito le sea notificado por correo, se añadirán tres (3) días al período prescrito, salvo que no será aplicable a los términos que sean contados a partir del archivo en autos de copia de la notificación de la sentencia."

(⁵) A modo de ejemplo, éstos son: el Art. 149 (30 L.P.R.A. sec. 2473) de la ley. En el Reglamento, éstos son: los Arts. 119.5, 119.7, 123.3 y 131.1.