# 2001 DTA 149

## TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL VI DE CAGUAS, HUMACAO Y GUAYAMA

ANA HILDA REYES MARTINEZ
Apelada

v.

ORIENTAL FEDERAL SAVINGS BANK (AHORA ORIENTAL BANK & TRUST)
Apelante

-------------------------------------------------------

ANA HILDA REYES MARTíNEZ
Apelante

v.

ORIENTAL FEDERAL SAVINGS BANK Y MIGUEL A. PEREZ BERRIOS
Apelados

Núm. Cons. KLAN-98-00771 / KLAN-98-00797

San Juan, Puerto Rico, a 19 de abril de 2001

Panel integrado por su Presidente, el Juez Ortiz Carrión,
la Juez Hernández Torres y el Juez González Rivera

## SENTENCIA ENMENDADA

El recurso que nos ocupa es secuela de la decisión emitida por el Tribunal Supremo de Puerto Rico en el caso de *Reyes v. OBT Fed. Savs. Bank*, 133 D.P.R. 15 (1993). En el referido caso, el alto foro judicial resolvió que la declaración jurada o la certificación del Alguacil en la cual hacía constar las diligencias efectuadas para emplazar por edicto fue insuficiente para adquirir jurisdicción *in personam* sobre la señora Ana Hilda Reyes Martínez. Tal insuficiencia maculó de nulidad los trámites judiciales efectuados por el Oriental Federal Savings Bank, hoy Oriental Bank and Trust (en adelante OBT), para ejecutar la hipoteca que gravaba la propiedad de la señora Reyes Martínez.

Para una mejor comprensión del dictamen dispositivo de estos recursos, procedemos a hacer un recuento del trasfondo procesal que trae este caso ante nuestra consideración por tercera ocasión.

## I

La señora Ana Hilda Reyes Martínez adquirió por herencia el 18 de junio de 1977, el inmueble objeto de la

presente acción. Según los libros del Registro de la Propiedad, el mismo se describe de la siguiente manera:

*"Rústica: Parcela en el Barrio Collores de Las Piedras, con cabida de mil metros cuadrados en lindes por el Norte; en cincuenta y cuatro punto diez metros con la parcela B a segregarse; por el Sur, en cincuenticuatro punto diez metros con la finca principal de la cual se segrega; por el Este, en dieciocho punto cincuenta metros con la finca principal de la cual se segrega y por el Oeste, en dieciocho punto cincuenta metros con la carretera novecientos veintidós.*

*---Que al folio 141 del tomo y finca antes indicados, se expresa que sobre dicha finca enclava una casa de dos niveles, hecha con bloques de concreto y pisos y techos del mismo material y que mide treintiocho pies de frente por cuarentiocho pies de fondo. Su segundo nivel es una casa dedicada a vivienda que tiene sala-comedor, cocina, dos servicios sanitarios, cuatro cuartos dormitorios, terraza, marquesina, balcón y cuarto de servicios. En su primer nivel existe un área abierta. Tiene un valor $10,000.00."*

Según consta en la escritura Núm. 229 otorgada en Humacao, Puerto Rico, el 8 de agosto de 1978, la señora Reyes Martínez y su entonces esposo Miguel A. Pérez Berríos constituyeron primera hipoteca sobre el referido inmueble y expidieron un pagaré hipotecario por la suma de $22,000.00 con intereses al 9 3/4% anual pagaderos en plazos mensuales consecutivos de $196.06 por el término de 25 años.

Luego de haberse divorciado, el 17 de diciembre de 1984, y antes de mudarse al estado de Nueva York, la señora Reyes Martínez arrendó el inmueble ■ al señor Isaac Arroyo Morales y a su esposa Tomasita Velázquez Rosado por un canon mensual de $250.00. El término pactado para este arrendamiento era de un (1) año comenzando el 1 de enero de 1985. El referido contrato podría ser renovado por cuatro (4) años adicionales en cuyo caso el canon sería renegociado. La señora Reyes Martínez convino con el arrendatario en que éste efectuaría directamente al OBT el pago correspondiente a la hipoteca, más pagaría una suma adicional por concepto de contribuciones sobre la propiedad.

El 20 de marzo de 1985, OBT presentó en el Tribunal Superior, Sala de Humacao, una demanda para ejecutar la hipoteca constituida sobre la propiedad de la señora Reyes Martínez. A esa fecha tenía un atraso de quince (15) mensualidades más intereses y recargos. El balance adeudado era de $23,507.20 más $2,200.00 estipulados por concepto de honorarios de abogado. Luego de llevarse a cabo los procedimientos con el propósito de emplazar válidamente a los demandados, el 1 de octubre de 1985, el tribunal declaró con lugar la demanda de ejecución en rebeldía contra ambos demandados. Específicamente, dicha sentencia dispuso:

*" ...declara la demanda con lugar y condena a los demandados a pagar a la parte demandante la suma de $20,466.68 de principal, $2,873.92 para intereses hasta el día 18 de septiembre de 1985, más los que se devengan hasta el pago final y definitivo de esta obligación, $166.60 de recargos y la suma de $2,200.00 para honorarios de abogado que se estipularon.*

*Se ordena al Alguacil de este tribunal que proceda a vender en pública subasta y al mejor postor la propiedad hipotecada... y que del producto de dicha venta proceda pagar en primer término los gastos del Alguacil, en segundo término las costas, gastos y honorarios de abogado hasta la suma de $2,200.00, los intereses y por último el principal adeudado."*

Luego de varios trámites, el 2 de diciembre de 1985, el foro apelado dictó una orden para disponer la ejecución de la sentencia mediante la venta en pública subasta de la propiedad en controversia. Se dispuso como precio mínimo de licitación la cantidad de $20,600.00 equivalentes al balance pendiente de pago por la apelante-apelada señora Reyes Martínez. Expedido el mandamiento de ejecución al Alguacil el 10 de enero de 1986, éste procedió a vender en pública subasta dicha finca adjudicándose la misma al OBT.

Mediante escritura otorgada ante notario, en la misma fecha de su ejecución, el Alguacil vendió a OBT el inmueble antes descrito por el referido precio de $20,600.00. Dicho título fue inscrito libre de cargas en la

sección correspondiente del Registro de la Propiedad. La cláusula primera de la referida escritura, la cual lleva el número doce (12) en el protocolo de instrumentos públicos del notario Faustino Aponte Parés, dispuso en lo pertinente lo siguiente:

*"Primera: Don Conrado Marcano, en su carácter de Alguacil del Tribunal Superior de Puerto Rico, Sala de Humacao, por la presente vende, cede y traspasa a favor de Oriental Federal Savings Bank todos los derechos o acciones que tienen los demandados en el caso civil CS, ochenta y cinco guión trescientos sesenta y uno de la finca arriba descrita, por el convenido y estipulado precio de VEINTE MIL, SEISCIENTOS DOLARES ($20,600.00) para abonar a la sentencia que obtuvo el compareciente Oriental Federal Savings Bank, quedando una deficiencia de cinco mil setecientos cuarenta y cuatro dólares con cuarenta y seis centavos ($5,744.46) no habiendo cantidad de dinero envuelta, por lo que el compareciente de la primera parte da carta de pago a su favor.*

*Cancelación*

*...[e]xistiendo confusión de acreedor y deudor en la persona del compareciente por lo que desea cancelar el referido pagaré consistiendo de la hipoteca que garantiza el mismo sea cancelada en el Registro de la Propiedad;...*

*...A esos efectos los comparecientes entregan a mi notario el referido pagaré hipotecario y yo, el notario, luego de cerciorarme de su autenticidad procedo a cancelarlo, taladrándole e inutilizándole, escribiendo la palabra "CANCELADO" sobre su faz, y una vez así cancelado, taladrado e inutilizado, lo uno a la primera copia certificada que expido de esta escritura de lo que DOY FE."*

El 29 de diciembre de 1986, el OBT vendió la finca antes descrita a la señora Miriam Soto Berberena por el precio de $50,000.00. Dicho título también fue inscrito en el Registro de la Propiedad.

Con desconocimiento de lo que estaba ocurriendo, la señora Reyes Martínez vino a Puerto Rico y no pudo localizar a su arrendatario. Se enteró que otra persona estaba viviendo su casa. Al inquirir, fue referida al abogado de la institución bancaria, mas no pudo obtener información sobre lo que había pasado.

El 27 de octubre de 1987, la señora Reyes Martínez demandó a OBT ante el foro apelado. Alegó la nulidad de los procedimientos que llevaron a la ejecución de su propiedad, reclamó la reivindicación de la misma y el resarcimiento en daños. Luego de varios trámites procesales que llevaron el caso ante el Tribunal Supremo de Puerto Rico el 7 de abril de 1993, dicha Superioridad declaró que los procedimientos seguidos para emplazar a la señora Reyes Martínez fueron nulos. Determinó que la insuficiencia del emplazamiento privó al Tribunal de Instancia de la jurisdicción *in personam*, sobre la señora Reyes Martínez. Tal falta de jurisdicción maculó de nulidad el trámite efectuado para ejecutar la hipoteca.

Determinada la ilegalidad de las actuaciones de OBT para ejecutar la hipoteca, el caso fue devuelto al Tribunal de Primera Instancia, luego de varios trámites procesales que incluyeron una apelación ante este foro. El panel compuesto por su presidente, Juez Amadeo Murga, la Jueza Pesante Martínez y el Juez Rivera Pérez, el 3 de mayo de 1996 en el caso KLAN-96-00250 emitió una sentencia confirmatoria de la decisión del Tribunal de Primera Instancia que había concluido que la deuda, aquí en controversia, aún no había sido pagada, ya que el cobro de ésta no había sido legal. Confirmó, también, este tribunal que la señora Reyes Martínez era deudora solidaria responsable de tal deuda. Ante tal dictamen, el tribunal *a quo* celebró el 17 de enero de 1997 una vista para fijar la cuantía por concepto de los daños.

En la misma, la señora Reyes Martínez presentó como parte de su prueba su propio testimonio y el del perito tasador señor Juan Manuel Morales Dávila. Este declaró que basado en ventas comparables de terreno y costo de reproducción de la estructura, la propiedad de la demandante tenía un valor de $119,226.37. De ese total $94,226.37 correspondía a la estructura y $25,000.00 al terreno. En igual medida, la demandante ofreció

en evidencia, el informe de valorización rendido en el que se valoró el primer nivel en $45,942.00 y el segundo nivel en $62,412.35, una copia de la sentencia del divorcio dictada entre ella y el señor Pérez Berríos, una certificación expedida el 12 de julio de 1985 por la sección de Humacao del Registro de la Propiedad relacionada con el inmueble objeto de controversia y una copia del contrato de arrendamiento otorgado el 17 de diciembre de 1984 en el que se afirma que la estructura tenía dos niveles. Por su parte, el OBT no ofreció prueba alguna en su defensa, habiendo quedado sometido el caso para adjudicación en los méritos por la prueba presentada por la demandante.

No obstante lo anterior, estando el caso sometido para su consideración, el 10 de febrero de 1997, el tribunal, *motu proprio*, dictó una orden solicitando que las partes sometieran el informe de tasación preparado el 20 de junio de 1978 por OBT. Fundamentó su orden en que el perito Morales Dávila había indicado en su testimonio que no pudo medir la estructura para lo cual utilizó el referido informe. La representación legal de la señora Reyes Martínez solicitó, mediante moción, que se dejara sin efecto la referida orden, por considerar que el tribunal no debía reabrir el caso para sugerir a una parte ofrecer en evidencia prueba que voluntariamente suprimió. Por su parte, OBT sometió una copia del documento en cumplimiento de la orden, aclaró que el mismo no fue sometido en evidencia y la persona que lo preparó no compareció como testigo. El Tribunal de Primera Instancia dictó una orden en la cual se dio por enterado de lo expuesto por las partes.

Dos meses más tarde, el 15 de abril de 1997, el foro apelado dictó sentencia. En la cual consignó entre sus determinaciones de hechos las siguientes:

*"7. El valor de la estructura objeto de ambos casos, al presente, basado en la tasación del tasador Juan M. Morales Dávila -descontando la primera planta que según la propia tasación no existía al 1985 y haciendo el correspondiente ajuste en la depreciación física es de $54,091.72. El valor actual del terreno tomando el unitario no ajustado de la tasación es de $20,000.00. El valor total actual de la propiedad es $74,091.72.*

*8. El valor actual de la sentencia de fecha 1 de octubre de 1985 por $25,707.20, es de $60,466.16, al 5 de marzo de 1997.*

*9. La deuda de OBT con Ana Hilda Reyes es de $74,091.72.*

*10. La deuda de Ana Hilda Reyes con OBT es de $10,466.16, o sea, $60,466.16 menos los $50,000.00 ya obtenidos por OBT al vender la propiedad en 1986.*

*11. La deuda neta o balance de OBT con Ana Hilda Reyes es de $64,091.72."*

El 5 de junio de 1997, luego de las partes haber solicitado determinaciones de hechos adicionales y reconsideración, el tribunal apelado emitió una sentencia enmendada en la cual formuló las siguientes nuevas determinaciones de hechos:

*"8. El valor de la estructura objeto de ambos casos, al presente, basado en la tasación del tasador Juan M. Morales Dávila -descontando la primera planta que según la propia tasación no existía a 1985 y haciendo el correspondiente ajuste en la depreciación física, es de $54,091.72. El valor actual del terreno tomado el unitario no ajustado de la tasación es de $20,000.00. El valor total actual de la propiedad es de $74,091.72.*

*9. El tasador Juan M. Morales expresó en su testimonio, "debido a que me fue imposible medir la estructura objeto de esta tasación, este evaluador se dejó llevar por la tasación hecha por el Oriental Federal Savings".*

*10. El valor actual de la sentencia de fecha 1 de octubre de 1985 por $25,707.20, es de $60,466.16, al 15 de marzo de 1997.*

*11. Previo a la ejecución de la sentencia efectuada el 1 de octubre de 1985, la propiedad objeto de este pleito se rentaba por $250.00 mensuales, cuyas rentas, de no haberse ejecutado la propiedad, habrían ascendido a $34,292.00.*

*12. La deuda actual de OBT con Ana Hilda es $88,625.72*

*(a) $30,242.00- intereses por los $50,000.00.*

*(b) $24,091.72- valor actual de la propiedad menos los $50,000.00.*

*(c) $34,292.00- los que hubiese rentado la propiedad $88,625.72*

*13. La deuda de Ana Hilda Reyes con OBT es $60,466.16.*

*14. La deuda neta o balance de OBT con Ana Hilda Reyes es $28,159.56."*

En la sentencia dictada se hizo constar lo siguiente:

*"Visto todo lo anterior, relativo a los casos consolidado HAC85-0361 y HAC87-1466, surge un balance en la suma de $28,159.56 a ser pagados por OBT a Ana Hilda Reyes Martínez."*

Tal determinación fue apelada por las partes de epígrafe ante este tribunal. El 20 de noviembre de 1997 se ordenó la devolución del caso al foro apelado hasta tanto se resolvieran todas las reclamaciones, los derechos y las obligaciones de todas las partes en el litigio. Estando el caso ante la consideración del foro apelado, el OBT desistió de la demanda de coparte presentada contra el señor Pérez Berríos, continuándose el mismo únicamente contra la señora Reyes Martínez, por ser deudora solidaria. Así, el 21 de mayo de 1998, el Tribunal de Primera Instancia, el Hon. Luis A. Amorós, ratificó la sentencia enmendada emitida el 5 de junio de 1997. Inconformes con el dictamen emitido, las partes de epígrafe presentaron los recursos de apelación que nos ocupan. Mediante resolución del 21 de agosto de 1998, este tribunal consolidó ambos recursos.

La señora Reyes Martínez invoca la comisión de cinco errores. Estos se relacionan con la negativa del tribunal a resolver que la obligación de la señora Reyes Martínez frente a OBT se extinguió por compensación, al concluirse que el valor de la propiedad es de sólo $74,071.92, que la sentencia dictada el 1 de octubre de 1985, sobre ejecución de hipoteca al 5 de marzo de 1997 tiene un valor actualizado de $60,466.16, al condenar a OBT a pagar $28,159.56 cuando lo correcto, de acuerdo a la prueba, era $124,436.36 y al negarse a declarar la temeridad de OBT. Por su parte, OBT plantea la validez de conceder doble compensación en una acción en que se reclaman daños y perjuicios e intereses sobre los $50,000.00 producto de la venta del inmueble a una tercera persona y simultáneamente otorgar una partida como producto de los frutos dejados de devengar.

Con el beneficio de los escritos en oposición de las partes en cada recurso, la exposición narrativa de la prueba y habiendo celebrado vista oral a tenor con la Regla 80 del Reglamento de este tribunal, pasamos a resolver. Una evaluación serena y desapasionada de la prueba, vista a la luz del derecho aplicable, nos lleva a concluir que erró el foro apelado, al apreciar la prueba, al considerar a la Sra. Reyes Martínez como deudora de OBT y al no hacer una determinación de temeridad. Procede, por tanto, la imposición de unas cuantías que justamente compensen el daño causado. Por estar íntimamente relacionados los señalamientos de error dirigidos a la concesión de daños, procedemos a discutir los mismos en conjunto.

## II

La acción para recobrar daños y perjuicios causados por un embargo ilegal es una *ex delicto* basada en el artículo 1802 de Código Civil, 31 L.P.R.A. sec. 5141; *Berríos v. International General Electric*, 88 D.P.R. 109 (1963); *Mejías v. López*, 51 D.P.R. 21 (1937). Véase, además, *Ramos v. Orientalist Rattan Furniture*, 130 D.P. R. 712 (1992).

La responsabilidad civil en daños y perjuicios es, precisamente, el deber de resarcir al damnificado otorgándole un valor económico al daño sufrido. El resarcimiento o indemnización pecuniaria consiste en atribuir al perjudicado la cantidad de dinero suficiente para compensar su interés perjudicado. Es como una subrogación real en que el dinero ocupara el lugar de los daños y perjuicios sufridos, y una atribución pecuniaria que crea una situación patrimonial que equivale a la destruida por el daño causado. *García Pagán v. Shiley Caribbean*, 122 D.P.R. 193 (1988); *Rodríguez Cancel v. A.E.E.*, 116 D.P.R. 442 (1985); *Moa v. E.L.A.*, 100 D.P.R. 573 (1972).

El Tribunal Supremo de Puerto Rico ha determinado que el derecho a ser compensado por daños no puede derrotarse meramente por el carácter especulativo que en alguna. medida supone el cómputo de daños. *Odriozola v. Cosmetic Dist. Corp.*, 116 D.P.R. 485 (1985). Al medir los daños en un caso, el juzgador debe hacerlo sobre una estricta base de correspondencia con la prueba, procurando que la indemnización no se convierta en una industria y que no lesione la economía. *Atiles v. McClure*, 87 D.P.R. 865 (1963). Este deber de los jueces tiene el propósito de conservar el sentido remediador y no punitivo que encarna el artículo 1802 de Código Civil. *Vda. de Valentín v. E.L.A.*, 84 D.P.R. 112 (1961). Se trata, en esencia, de crear una situación patrimonial que equivalga a la destruida por el daño causado. *García Pagán v. Shiley Carribbean, supra.*

Por otro lado, es menester recordar que reiteradamente el Tribunal Supremo ha establecido que los tribunales apelativos no deben intervenir con la estimación de los daños que realicen los tribunales de instancia, ya que éstos se encuentran en mejor posición para evaluar sus elementos visibles e intangibles. *Quiñones v. Manzano*, **96 J.T.S. 95**, resuelto el 25 de junio de 1996; *Cotto Morales v. Ríos*, 140 D.P.R. 604 (1996); *Rosado v. Supermercado Mr. Special*, 139 D.P.R. 946 (1996); *Reily v. Rodríguez de Pacheco*, 119 D.P.R. 762 (1987); *Urrutia v. A.A.A.*, 103 D.P.R. 643 (1975); *Valldejully Rodríguez v. A.A.A.*, 99 D.P.R. 917 (1971). La parte que solicita la modificación de los daños viene obligada a demostrar la existencia de las circunstancias que hacen meritorio el que se modifiquen las mismas. *Canales Velázquez v. Rosario Quiles*, 107 D.P.R. 757 (1978). Trazadas las coordenadas adjudicativas correctas, resolvemos que en el presente caso existen las circunstancias que nos permiten modificar las cuantías concedidas. *Urrutia v. A.A.A., supra.*

### III

Según se desprende de la sentencia enmendada, el tribunal apelado, a la cantidad total del valor total de la propiedad establecida por el tasador, le descontó los que a su juicio era el valor del primer nivel por considerar que éste no existía en el año 1985. Ello significa que la señora Reyes Martínez no tendría derecho a recobrar como daño el producto de esa mejora por no haber sido realizada mientras fue dueña de la propiedad.

Al dictaminar como lo hizo, el foro apelado consideró la prueba conflictiva de la propia demandante. De la misma se desprende, por un lado, que el tasador expresó durante su testimonio que según su mejor criterio para el año 1985, la casa tenía un sólo nivel. Cuando la fue a tasar en mayo de 1996, tenía dos niveles; así, también, el testimonio de la demandante estableció que la propiedad está hoy en las mismas condiciones en que la adquirió. También consideró el foro apelado la prueba documental aportada consistente de un contrato de arrendamiento en el cual se hace referencia en varias instancias a que la propiedad tenía dos niveles, el segundo de los cuales estaba dedicado a vivienda. El otro documento presentado y admitido en evidencia, consiste de una certificación del Registro de la Propiedad expedida el 12 de julio de 1985. En el mismo se expresa que el segundo nivel es una casa dedicada a vivienda y el primer nivel es un espacio abierto.

El foro de instancia dirimió tal conflicto de prueba al dictaminar que para el 1985 el primer nivel de la estructura no existía, por lo que procedió a descontar el valor de la misma.

En el ejercicio de nuestra función revisora debemos resolver la corrección de este aspecto del caso conforme a la determinación del Tribunal de Primera Instancia. La misma no produce insatisfacción de conciencia, ni estremece nuestro sentido de justicia. Por lo que no intervendremos con tal conclusión. *López Vicil v. I.T.T. Intermedia*, **97 J.T.S. 42**, resuelto el 4 de abril de 1997; *Quiñones López v. Manzano Pozas*, **96 J.**

**T.S. 95**, resuelto el 25 de junio de 1996; *Pueblo de Puerto Rico v. Bonilla Romero*, 120 D.P.R. 92 (1987).

No obstante haber resuelto correctamente el asunto relacionado al espacio abierto del primer nivel, el foro apelado cometió erró al valorar el remanente de la estructura en $54,091.72 y el valor del terreno en $20,000.00. No hemos encontrado apoyo en la prueba presentada para justificar dicha reducción. Según la prueba incontrovertida que surge de la exposición narrativa y la prueba documental presentada en evidencia por la demandante, el tasador fijó en $62,412.35 el valor del segundo nivel y el terreno en $25,000.00.

Este tribunal tiene la obligación de velar porque se haga justicia a aquella parte que de acuerdo a nuestro más sano criterio tiene derecho a ello. *Ríos Quiñones v. Adm. de Serv. Agrícolas,* **96 J.T.S. 71**, resuelto el 20 de mayo de 1996; *Rodríguez Cruz v. Padilla Ayala*, 125 D.P.R. 486 (1990); *Ab In testato Marini Pabón*, 107 D.P. R. 433 (1978). Resolvemos, guiando por un criterio acorde con la justicia sustancial, que debemos modificar la sentencia enmendada para configurarla a la realidad probada, de modo que se conserve el sentido remediador del resarcimiento que impone el artículo 1802 para conceder a la demandante el valor del segundo nivel que de acuerdo a la prueba es de $62,412.35 y el valor del terreno $25,000.00.

Nos corresponde ahora evaluar la procedencia de los frutos civiles dejados de devengar por la señora Reyes Martínez. De la exposición narrativa de la prueba, así como de la prueba documental aportada por la demandante, se desprende que al momento de la ejecución, la segunda planta de la propiedad estaba arrendada en $250.00 mensuales. El término pactado para ese arrendamiento era de un (1) año, comenzando el 1 de enero de 1986. El referido contrato podría ser renovado por cuatro (4) años adicionales, en cuyo caso el canon de arrendamiento sería renegociado.

Establecido el derecho de la señora Reyes Martínez para que se cree una situación patrimonial equivalente al destruido por las actuaciones de OBT, procedemos a concederle lo que a nuestro juicio constituye el valor razonable de los frutos civiles que dejó de percibir. Resolvemos que a la fecha de ejecución, dicho contrato había vencido, pero la propiedad aún se encontraba en el mercado de alquileres. En vista al despojo de la posesión del inmueble del que fueron víctimas los arrendatarios, reconocemos a la señora Reyes Martínez, una expectativa razonable de que la propiedad hubiere permanecido en tal mercado por cuatro (4) años adicionales. Por tal razón, somos de opinión que en ausencia de otra prueba, debe ser resarcida la demandante por los frutos dejados de devengar durante esos cuatro (4) años. Estos se computan desde el día 10 de enero de 1986, fecha en que OBT se adjudicó la propiedad ilegalmente, hasta el vencimiento del contrato de arrendamiento el cual hubiere ocurrido para el 10 de enero de 1990. Tal suma asciende a la cantidad de $12,000.00.

## IV

En cuanto a la actuación del foro apelado de considerar a la señora Reyes Martínez como deudora solidaria del OBT, somos concientes que un panel de este tribunal estableció que la deuda de ésta con el OBT todavía no había sido pagada, ya que el cobro no había sido legal.

Tal dictamen, de ordinario, constituye la ley del caso, más no podemos perder de vista que dicha doctrina, discrecional en su aplicación, expresa la práctica deseable de los tribunales de rehusarse reabrir a discusión lo anteriormente decidido. Esta doctrina no pretende limitar las facultades de un tribunal para impartir justicia. *Secretario del Trabajo v. Tribunal Superior*, 95 D.P.R. 136 (1967); *Martorel v. J. Ochoa*, 25 D.P.R. 759 (1917).

La doctrina de la ley del caso es una manifestación que postula que las determinaciones de un tribunal apelativo constituyen la ley del caso en todas aquellas cuestiones consideradas y decididas y cuyas determinaciones generalmente obligan tanto al tribunal de instancia como al que las dictó, si el caso vuelve a su consideración. Pero si el Tribunal Apelativo entiende que la ley del caso antes establecida es errónea y puede causar una grave injusticia, dicho foro puede aplicar una norma de derecho diferente a fin de resolver en forma justa. *Don Quixote Hotel v. Tribunal Superior*, 100 D.P.R. 19, (1971). Siendo discrecional la aplicación de la doctrina de la ley del caso en el ejercicio responsable de nuestra función revisora, determinamos no aplicar la

misma al caso de autos para evitar un fracaso de la justicia.

Al así resolver, hemos considerado el hecho de que luego de haberse adjudicado la propiedad, para satisfacer la sentencia de ejecución emitida el 1 de octubre de 1985, mediante escritura pública otorgada el 10 de enero de 1986, el OBT solicitó la cancelación del pagaré objeto de disputa. De tal modo, luego transfirió el título sobre el inmueble a una tercera persona. De esa forma desapareció íntegramente la garantía hipotecaria en controversia. Ello significa que cualquier obligación que tuviera la señora Reyes Martínez con OBT se extinguió por haberse cobrado su crédito y cancelado el pagaré que lo evidenciaba.

Aunque el procedimiento de ejecución de la propiedad fue nulo e ilegal, según lo determinó el Tribunal Supremo de Puerto Rico, la realidad indisputada es que OBT se adjudicó la referida propiedad y la retuvo hasta que la vendió por el precio de $50,000.00. Tal procedimiento nulo permitió como cuestión de realidad que OBT recobrase su crédito declarado por sentencia y también le permitió obtener un beneficio de $21,785.12, en exceso del crédito adeudado hasta el momento de la ejecución ilegal, más los intereses que esa suma ha devengado. Por tal razón, habiéndose cancelado el crédito de la señora Reyes Martínez, el OBT está impedido de reclamar deuda alguna de parte de ésta.

## V

Finalmente, atendamos el reclamo de costas y de honorarios de abogado que formula la señora Reyes Martínez. Así, dejamos consignado que la Regla 44.1(b) de las de Procedimiento Civil dispone que el memorando de costas será presentado al tribunal y notificado a las partes dentro del término de diez (10) días, contados a partir del archivo en autos de copia de la notificación de la sentencia. De los autos de este caso no se desprende que el representante legal de la señora Reyes Martínez haya presentado el memorando de costas luego de haberse dictado la sentencia enmendada que es objeto de este recurso, en cumplimiento con la antes referida disposición legal, la cual es de carácter jurisdiccional. Ante tal realidad, es improcedente solicitarlas por primera vez en apelación.

Examinemos si erró el foro apelado a negarse a condenar a OBT al pago de honorarios de abogado. Al así hacerlo, tenemos presente que la determinación sobre si una parte ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador. La misma no será variada en apelación, a menos que se demuestre que el antedicho foro abusó de su discreción. *Bonilla Medina v. Partido Nuevo Progresista*, 140 D.P.R. 294 (1996); *Parrilla Báez v. Airport Catering Services,* 133 D.P.R. 263 (1993); *Raoca Plumbing v. Trans World Assurance Co.*, 114 D.P.R. 464 (1983).

La Regla 44.1 (d) de las de Procedimiento Civil dispone en cuanto a honorarios de abogado lo siguiente:

*"En caso de que cualquier parte haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia, al responsable, el pago de una suma por concepto de honorarios de abogado que el tribunal entienda corresponda a tal conducta."*

Así, la norma vigente en nuestro ordenamiento procesal civil es que la imposición de honorarios de abogados procede únicamente cuando una parte manifiesta una actitud obstinada que se proyecta sobre el procedimiento y afecta el buen funcionamiento y la administración de la justicia. También sujeta al litigante inocente a la ordalía del proceso judicial y lo expone a gastos innecesarios y a la contratación de servicios profesionales con el gravamen, a veces exorbitante para su peculio. Véase *Departamento de Recreación y Deportes v. Asociación Recreativa Round Hill, Inc.,* **99 J.T.S. 135**, op. del 19 de agosto de 1999; *Oliveras v. Universal Insurance Co.,* **96 J.T.S. 145**, op. del 7 de noviembre de 1996; *Miranda v. E.L.A.,* 137 D.P.R. 700 (1994); *Fernández v. San Juan Cement Co., Inc.,* 118 D.P.R. 713 (1987).

Tras el estudio de los autos y análisis de los trámites procesales acontecidos en este caso, estamos convencidos que el foro apelado abusó de su discreción al no condenar a OBT al pago de honorarios de abogado. OBT negó desde el principio su responsabilidad, aun cuando era fácil advertir de los hechos del presente caso su

responsabilidad y obligación de indemnizar. Su actitud obstinada, aún después de la sentencia del Tribunal Supremo de Puerto Rico, ha expuesto a la apelante Reyes Martínez a litigar innecesariamente e incurrir en gastos en un pleito que, aunque sencillo en su naturaleza, fue convertido en uno altamente contencioso y complejo que se ha extendido desde el 1985 hasta el presente, que ha requerido múltiples comparecencias tanto ante el Tribunal de Primera Instancia como en los foros apelativos.

Antes de intervenir con las cuantías concedidas por el Tribunal de Primera Instancia, dejamos sin efecto la cantidad de $28,159.56 concedida por el foro apelado a la señora Reyes Martínez. De tal forma, se modifica la sentencia dictada por el tribunal *a quo* en los siguientes aspectos:

"*1. Se ordena a OBT pagar la cantidad de $62,412.35 correspondiente al valor del segundo nivel de la propiedad ilegalmente ejecutada; se ordena, además, el pago de $25,000.00 por concepto del valor del terreno de acuerdo a la tasación preparada por el perito.*

*2. Se ordena OBT pagar la cantidad de $12,000.00 por concepto de los frutos civiles dejados de recibir.*

*3. Se ordena, además, el pago de la suma de $15,000.00 por concepto de honorarios de abogado.*

*4. Se establece que las cuantías concedidas en los incisos primero y segundo generan interés legal al 9.25% vigente al momento de dictarse la sentencia originalmente por el foro apelado el 15 de abril de 1997. Siendo éste un caso de daños y perjuicios, los intereses al 9.25% dispuestos son intereses por temeridad bajo la regla 44.3 (b) a computarse sobre la sentencia desde el 25 de octubre de 1987, fecha de presentación de la demanda y hasta que sea satisfecha la misma.*"

Así modificada la sentencia apelada, se confirma la misma.

Se ordena además a la secretaria general de este foro apelativo devolver al Tribunal de Primera Instancia los autos originales de los casos HCD1985-0361 y HAC1987-1466.

Así lo pronuncio y manda el tribunal y lo certifica la Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General

## ESCOLIOS 2001 DTA 149

**1.** Según el informe del tasador, está segunda planta tiene una capacidad de 1,783.21 pies cuadrados y tiene un valor de $62,412.35.

**2.** Véase cláusula I del Contrato de Arrendamiento.